CHARLES D. BROWN & COMPANY v. LUCAS COUNTY, Appellant, and two other cases.

**Construction:** STATUTE. Code, 3832, provides that for certain public printing not more shall be paid than "one dollar per square of ten lines of brevier type *or its equivalent.*" *Held,* this simply means that a piece of printing worth as much as a square of ten lines brevier is the equivalent of such square. It does not mean that this is the rate for filling the space of ten lines brevier with any kind of type. Followed in *Brown v. Lucas County* and *Campbell v. Lucas County.*

*Appeal from Lucas District Court.*—HON. W. D. TIS-DALE, Judge.

WEDNESDAY, APRIL 3, 1895.

The plaintiff firm is the publisher of the Chariton *Herald,* one of the official papers of Lucas county for

the publication of its proceedings. The proceedings of the county were published in three instead of two papers, by agreement among the respective publishers, the compensation to the three papers to be the same as is allowed by law to two papers, which would give to each twenty-two and two-ninths cents per square, instead of thirty-three and one-third cents per square, where the publication is in two papers. The plaintiff firm presented a claim to the board of supervisors of the defendant county for ninety-eight dollars and seventy-seven cents, with interest, which the board refused, and this action is to recover the amount. The case on appeal presents only a question as to the construction of the statute fixing the compensation for such publications. In the district court there was a judgment for plaintiffs, and the defendant appealed.— *Affirmed.*

*Stuart & Bartholomew* for appellant.

*J. C. Mitchell* for appellees.

Granger, J.—As to legal advertisements, the law provides (Code, section 3832): "In all cases where publication of legal notices of any kind are required or allowed by law, the person or officer desiring such publication shall not be required *to pay more than one dollar per square of ten lines of brevier type or its equivalent,* for the first insertion, and fifty cents per square for each subsequent insertion." Section 307 is the one making provision for the selection of newspapers in which are to be published the proceedings of the board of supervisors, and, after providing for such publication, it is said: "And the cost of such publication shall not exceed one-third the rate allowed by the law for legal advertisements."

The following facts were found by the district court: "First. That, in strictly following copy furnished the plaintiffs by defendant, the plaintiffs were required to set out the matter in tabulated form, with the exception of twenty-three and six-tenths squares. Second. That the printing sued for by the plaintiffs, and claimed to be tabulated matter, to-wit, four hundred twenty and nine-tenths squares, was tabulated matter. Third. That the plaintiffs published for the defendant twenty-three and six-tenths squares of straight matter, and four hundred twenty and nine-tenths squares of tabulated matter."

By a stipulation, the following question is for our consideration: "(One.) Was it competent for plaintiffs to show in evidence that the word 'equivalent' and the word 'square,' as relating to printed matter, have a well defined meaning among printers throughout the country, and to further show what space occupied by tabular printed matter is calculated by printers throughout the country as the 'equivalent' of a 'square of ten lines of brevier'? If it was competent, then this case should be affirmed. If it was not competent, then the case should be reversed, unless it should be affirmed on account of *res adjudicata.*"

The claims of the parties are as follows: Appellant, in its brief, prints ten lines of brevier type, which the law defines as a "square," and then says: "This we insist is the square or unit of measurement provided by the legislature, by which all publications of legal notices and proceedings of the board of supervisors must be measured, regardless of the kind or character of the type used or the cost of the work." The meaning of the language may be made clearer by the following statement in the argument: "The square shall be the space occupied by ten lines of brevier type or its equivalent; that is the same space in any kind or

character of type." From these it appears that appellant's theory of the law is that the specified compensation is to be paid for the space occupied by ten lines in brevier type, regardless of the matter contained within it. If smaller type is used, so that more matter is printed in the same space, and the cost of printing is greater, still the compensation is just the same. If much large type is used, so that much less is printed, and the cost correspondingly less, yet the same compensation is to be paid. Appellees' claim is that, taking the square of ten lines in brevier type in "straight matter" as the standard, if other type or form of printing is desired, the equivalent of the square in brevier type is determined by the necessary cost to the publisher of the different kinds of printing. As applied to this case, from the facts found by the court, the plaintiff was required to print a part of the work in a tabulated form, instead of as "straight matter," as plain printing is called in the record. There is evidence to show that it costs three times as much to print matter in a tabulated form as it does to print it straight. We think the legislative intent was, not to fix a compensation for filling a certain space with printing, of whatever kind, but to fix a compensation for a particular space of a particular kind of printing, and make it the standard by which other kinds of printing could be measured and compensated. It is fair to presume that the compensation fixed was designed as just for a square of ten lines in brevier type of straight work. If so, it would be a harsh construction to say that the board could deliver tabular work, requiring three times the cost to perform it, and then make compensation on the basis of straight work, because of the words, "or its equivalent," as used in the law. There is, however, justice in the thought that the intent was to fix a compensation for a specified service, and then allow for addi-

tional services on the same basis. It is urged that appellees' construction would involve confusion and uncertainty because of different prices for printing. It is said: "The printer fixes the price absolutely. The board of supervisors do not know and cannot know the cost of printing their proceedings until the printer presents his bill." The conclusion is not warranted. With the square in brevier type as a basis, if a different form of work is desired, by which the same space will cost less, then less is to be paid for it. If it costs more for the same space, then more is to be paid. The payment is to be made, at all times, on the basis of the fixed compensation for the specified space and form of printing. This leaves nothing to the printer, more than to the board of supervisors, for when it seeks different kinds of printing it should ascertain the additional cost. The same certainty exists as to both parties. If such printing is done without giving attention to know the additional cost, then, of course, in case of disagreement and litigation, the usual forms of judicial inquiry are to obtain, which are those employed in this case by using witnesses presumed, from their skill and experience, to know the additional cost of the work done. It is the system of inquiry adopted, in such cases, throughout the jurisprudence of the country. In fact, we do not understand appellant to question this, unless its construction as to the term "equivalent" obtains.

We have viewed the questions stipulated in view of the arguments presented, and as thus understood we think the form of inquiry adopted was a correct one, which conclusion leads to an affirmance of the case.

This conclusion renders it unimportant to consider the question as to a former adjudication.—*Affirmed.*