F. B. Dorsey et al., Appellants, v. C. Bentzinger et al., Appellees.

No. 39020.

November 13, 1928.

Opinion on Rehearing June 24, 1929.

Rehearing Denied February 15, 1930.

J. O. Boyd, for appellants.

James S. Burrows, for appellees.

Grimm, J.—The property in question .(Lot 6, in Block 12, Reeves's Addition to the city of Keokuk) was purchased by the Bentzingers (husband and wife) in 1912, and occupied by them as the family home until May 5, 1926. In 1922, Dorsey, the plaintiff, a physician and surgeon, was employed to render professional services to both Mr. and Mrs. Bentzinger. On April 16, 1925, Dorsey secured a judgment against Bentzinger and his wife on his claim for professional services rendered, as above set forth. On May 5, 1926, Bentzinger and his wife transferred the title by warranty deed to one Swan, and about that time, surrendered possession and occupancy of the premises to Swan. On July 18, 1927, Dorsey procured the issuance of an execution, and levied on the real estate then owned and used by Swan. On August 3, 1927, Swan served on the sheriff a notice stating that the property described in the sale notice belonged to him (Swan), and that he was the absolute owner thereof, and that he acquired the same on the 5th day of May, 1926, from the Bentzingers. The notice also contained recitations of the homestead character of the property during the time the same was occupied by the Bentzingers, from August 3, 1912, to May 5, 1926, and a recitation that he (Swan) had acquired the property free and clear of the judgment of Dorsey, and that the property was exempt in Swan's hands, as the grantee of the said Bentzingers. At the same time, Swan served on the sheriff an affidavit signed by the Bentzingers, setting forth the facts of their homestead occupancy and a recitation that the debt sued on was not incurred until 1922; that they had sold the premises in the year 1925 to Swan; and that they no longer owned it. On August 3, 1927, the real estate was

sold under execution to Dorsey. On August 30, 1927, Swan served a notice of motion on Dorsey and the sheriff, stating that, on the 19th day of September, 1927, he would file a motion, accompanied by affidavits, and attached to said notice a copy of the motion. The motion asks the court to set aside the sheriff's sale upon the following grounds:

"(1)   Because Frank W. Swan was the owner of the above-described premises at the time of said sale, he having purchased the same by warranty deed from C. Bentzinger and Hettie Bentzinger on the 5th day of May, 1926.

"(2)   Because the judgment in the above-entitled case is not, and at no time has been, a lien upon Lot Six (6) in Block Twelve (12) in Reeves, Perry & William's Addition to the City of Keokuk, Lee County, Iowa, or upon any part thereof, or upon any interest therein.

"(3)   Because, at the time of levy of execution and sheriff's sale in the above-entitled case, the defendants C. Bentzinger and Hettie Bentzinger were not the owners of said property.

"(4)   Because, at the time that Frank W. Swan purchased said lot * * *, and for many years prior thereto, the said premises was the homestead of C. Bentzinger and Hettie Bentzinger, and was exempt, under the statutes of the state of Iowa, from judicial sale, and the judgment in this case was not a lien on said premises."

Attached to the motion was the affidavit of Swan, to the effect that he had purchased said property from the Bentzingers on May 5, 1926, and had paid $2,900 for same. There was also attached the affidavit of the Bentzingers, stating, in substance, that they had purchased the premises in 1912, had occupied the same as a homestead until May 5, 1926, on which date they had sold the property to Swan; that the Dorsey account was not contracted until 1922, and judgment was not entered thereon until 1925. There were also attached to the motion copies of the notice and affidavit served on the sheriff prior to the date of sale.

To this motion a resistance was filed by Dorsey, alleging, among other things, that Swan, not being a party to the original action, and not having filed any intervention, had no right to appear in the cause; that Swan had either actual or construc-

tive notice of the existence of plaintiff's judgment before he took title to the real estate, and therefore is estopped from calling in question the sale; that the services rendered by Dorsey as a physician were a family charge, and a lien upon the homestead; that Swan was not entitled to the relief sought by the motion; that the motion was not the proper method of procedure to secure the relief sought by Swan; that the Bentzingers had abandoned their homestead, and the real estate thereafter became liable to plaintiff's judgment; and also, that Swan had taken deed to the property in question as security for a prior indebtedness, and therefore the deed was, in reality, a mortgage, and the same must be foreclosed before Swan could appear, with his motion, as a party interested, to set aside the sale and certificate.

I. It is contended that, because of the provisions of Section 10459, Code of 1927, Dorsey's charges as a physician for services rendered to the members of the Bentzinger family became a lien on the homestead. The section is as follows:

"The reasonable and necessary expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately."

Section 10150 is as follows:

"The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary, and such right shall continue in favor of the party to whom it is adjudged by divorce decree during continued personal occupancy by such party."

It is claimed that by Section 10459 there is "a special declaration of statute to the contrary," and we are asked to so hold. This is not the law.

Section 10155 specifies that homesteads may be sold to satisfy debts of each of the following classes:

"1. Those contracted prior to its acquisition, but then

only to satisfy a deficiency remaining after exhausting the other property of the debtor, liable to execution.

"2. Those created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt.

"3. Those incurred for work done or material furnished exclusively for the improvement of the homestead.

"4. If there is no survivor or issue, for the payment of any debts to which it might at that time be subjected if it had never been held as a homestead."

Section 10147 pertains to conveyance or incumbrance of the homestead. Section 7192 creates a lien for delinquent personal taxes. Section 12308 creates a lien for costs arising in establishing boundary lines. The foregoing are statutory declarations against homestead exemptions. Section 10459 is not one, and does not create a lien. It simply provides that reasonable and necessary expenses of the family and the education of the children are *chargeable* upon the property of both husband and wife, or either of them, and is not, as specified in Section 10150, a "special declaration of statute to the contrary." It follows that Dorsey's judgment against the Bentzingers, secured in April, 1925, did not become a lien upon the real estate in question, in the ownership and possession of the Bentzingers.

II. The real estate in controversy was purchased by Swan, and conveyed to him by the Bentzingers, more than a year before the execution was issued on the Dorsey judgment and levied on the real estate in controversy. The judgment was not a lien on the property.

III. We come now to a consideration of the question, as raised by the plaintiff, whether, under the law, Swan was entitled to the provisions of Section 11734 of the Code of 1927. The section reads as follows:

"When any person shall purchase at a sheriff's sale any real estate on which the judgment upon which the execution issued was not a lien at the time of the levy, and which fact

 was unknown to the purchaser, the court shall set aside such sale on motion, notice having been given to the debtor as in case of action, and a new execution may be issued to enforce the judgment, and, upon the order being made to set aside the sale, the sheriff or judgment creditor shall pay over to the purchaser the purchase money; *said motion may also be made by any person interested in the real estate.*" (The italics are ours.)

It is urged that, notwithstanding the words italicized in the foregoing copy, the section inures only to the benefit of the purchaser at execution sale, or someone in privity with the  purchaser. With this view we cannot agree. A reasonable inference is that the legislature intended by the language in controversy to say "said motion *to set aside* may," etc. This is much more reasonable and much more in harmony with the balance of the sentence than that the legislature intended to say "said motion *made by the purchaser under the foregoing circumstances* may also be made by any person interested in the real estate." In that form the sentence would be inconsistent and utterly meaningless.

This section first appeared in the Code of 1860. Prior to that time, on October 23, 1858, this court, in *Ritter v. Henshaw*, 7 Iowa 97, recognized the procedure by motion to set aside a levy and sale of real estate under execution, the motion having been made by the plaintiff in the action, who also was the purchaser at sheriff's sale. The purchaser accordingly, at the time the statute was passed, had his remedy without the statute. The statute is, in substance, a declaration of the holding of the court in the *Ritter* case, but with the addition that "said motion may also be made by any person interested in the real estate."

In 1862, two years after the passage of the statute in question (*Bradford v. Limpus*, 13 Iowa 424), this court affirmed the action of the lower court in sustaining a motion made by the judgment debtor to set aside a levy and sale, on the ground set forth in the motion, that he was not the legal owner, and never had been, of a part of the land thus sold.

These words in controversy are plain and unambiguous, and in construing the statute we are compelled, if possible, to

give them weight, and the ordinary meaning attached to the words. It will be noted that the statute does not provide, "The court shall set aside such sale on motion *of the purchaser or a party in privity with him.*" It may be conceded that, on its face, the general purpose of the statute was to afford relief to a purchaser at execution sale, and it reasonably follows that the same relief should be granted to one, for illustration, who had furnished a part of the money for the purchase at execution sale, or to one who, in the meantime, and before the motion was filed, had obtained title from the purchaser. But the legislature did not stop there. It evidently intended that any person interested in the real estate might make the motion. The legislature did not say, "Any person interested in the real estate as a purchaser, or party assisting financially in the purchase, or the purchaser or his grantees." The language is broad, and includes "any person interested in the real estate." If we are to give to the statute the construction demanded by the plaintiff, we in substance delete the italicized words from the section.

"This is never allowed, if a construction can be legitimately found which will give force to and preserve *all the words of the statute.*" (The italics are ours.) *Leversee v. Reynolds,* 13 Iowa 310.

"By holding that jurisdiction is limited to the township wherein the property is found, we would reject the last clause of the section, extending it throughout the county. But we must give effect to all words of the statute." *Knowles v. Picket,* 46 Iowa 503.

Many other cases might be cited.

That other remedies were open to Swan is not material. The motion was properly sustained. The cause is—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.