IN RE ESTATE OF RALPH VAN VECHTEN.

FORMAN STATE TRUST & SAVINGS BANK, Trustee, et al., Appellees, v. LEO J. WEGMAN, Treasurer of State, Appellant.

No. 42387.

DECEMBER 12, 1933.

REHEARING DENIED APRIL 5, 1934.

Edward L. O'Connor, Attorney-general, and Clair E. Hamilton, Assistant Attorney-general, for appellant.

Gerald O. Blake, and Barnes, Chamberlain & Hanzlik, for appellees.

KINDIG, J.—This action is brought by the plaintiffs-appellees, Forman State Trust & Savings Bank, trustee of the estate of Ralph Van Vechten, deceased, Emma Van Vechten Shaffer, Van Vechten Shaffer, Carl Van Vechten, Duane Van Vechten, and Valeria Moore, under section 7396 of the 1931 Code, to recover from the defendant-appellant, Leo J. Wegman, as treasurer of the state of Iowa, $8,321.89 wrongfully collected from the estate of Ralph Van Vechten, now deceased, by the state as an inheritance tax on intangible personal property. The district court allowed the refund, and, from the judgment thus entered, the state treasurer appeals.

I. Ralph Van Vechten, a resident of Cook county, Illinois, died, owning certain intangible personal property in the state of Iowa. Thereafter, the Forman State Trust & Savings Bank was named trustee of his estate. A demand was made on the trustee by the state of Iowa for $8,321.89 as an inheritance tax for the intangible personal property in Iowa. On July 17, 1928, this sum was paid by the appellee, trustee, to the state treasurer, and that official still retains the money.

Following the payment of such inheritance tax by the Van Vechten estate, this court held that a tax on such intangibles could not be collected in Iowa when the decedent is a nonresident and taxes on such property already have been paid in the state of his demise. In re Estate of Archibald C. Smith, 209 Iowa 685, 228 N. W. 638. In the Smith's Estate case, we said, reading on pages 685 and 686:

"The argument of counsel for appellants proceeds on the theory that the prior holdings of this court announced in Hoyt v. Keegan, 183 Iowa 592, and Chaffin v. Johnson, 200 Iowa 89, have been superseded by recent decisions of the Supreme Court of the United States, and that Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439, upon which the Iowa cases are based, was overruled by Frick v. Pennsylvania, 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316, and Safe Dep. & Tr. Co. v. Virginia, 280 U. S. 83, 50 S. Ct. 59, 74 L. Ed. 180, 67 A. L. R. 386, and other cases decided by the United States Supreme Court.

"We need not discuss the effect of the holding of the court in the later cases above referred to upon Blackstone v. Miller, supra, and our own cases, as the Supreme Court of the United States, on January 6, 1930, handed down an opinion in Farmers' Loan & Tr. Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 99, 74 L. Ed. 371 [65 A. L. R. 1000], which specifically overrules Blackstone v. Miller. The effect of the rule announced in the Minnesota case is to deny the right of more than one state to claim a succession tax on the transfer of intangibles."

Upon the basis of the Smith's Estate case (209 Iowa 685), supra, the appellees in the case at bar seek to recover from the state treasurer the inheritance taxes wrongfully collected by the state on intangible personal property belonging to the Van Vechten estate. Section 7396 of the 1931 Code, before mentioned, provides: "When,

within five years after the payment of the tax [inheritance tax], a court of competent jurisdiction may determine that property upon which an inheritance tax has been paid is not subject to or liable for the payment of such tax, or that the amount of tax paid was excessive, so much of such tax as has 'been overpaid to the treasurer of state shall be returned or refunded to the executor or administrator of such estate, or to those entitled thereto. When a certified *copy of the record of such court showing the fact of nonliability of* such property to the payment of such tax has been filed with the executive council of the state, the executive council shall, *if the case has been finally determined,* issue an order to the auditor of state directing him to issue a warrant upon the treasurer of state to refund such tax. Such order of court shall not be given until fifteen days' notice of the application therefor shall have been given to the treasurer of state of the time and place of the hearing of such application, which notice shall be served in the same manner as provided for original notices." (Italics supplied.)

So, in conformity with the above-quoted statute, the appellees, on July 5, 1933, filed in the Polk county district court their petition, wherein they asked for the refund of the aforesaid inheritance taxes wrongfully collected. See Estate of Archibald Smith (209 Iowa 685, 228 N. W. 638), supra. A notice of the pendency of such proceedings to recover the taxes was served upon the appellant state treasurer, July 6, 1933. The appellant state treasurer appeared and filed answer, and the cause was heard in the Polk county district court on September 16, 1933. After taking the matter under advisement, the Polk county district court, on September 22, 1933, decided that the taxes should be recovered by the appellees, and accordingly entered judgment.

It is said by the appellant that the appellees are not entitled to recover the taxes because they did not finally adjudicate their claim within the period of five years after the taxes were collected by the state treasurer. This theory of the appellant is alleged to be founded upon section 7396 of the 1931 Code, above quoted. While the cause in the case at bar was commenced within the five-year period, the adjudication did not take place until after the five-year period. But it is argued by the appellees that section 7396 does not require them to adjudicate their claim within five years. That section, the appellees argue, only requires that their action to recover the taxes be commenced within the five-year period.

As before indicated, the appellees did commence their action by filing their petition with the clerk of the Polk county district court, and serving notice upon the state treasurer of the pending cause, within the five-year period. An argument is made by the appellant treasurer that the first sentence of section 7396, above quoted, indicates that the adjudication must be within the five-year period. On the other hand, it is contended by the appellees that the sentence of the statute under consideration simply provides that the action must be commenced within the five-year period. Such is true, the appellees declare, when the well-known rules of construction are applied to this statute. When replying to this claim of the appellees, the appellant says that the statute is unambiguous, and therefore the rules of construction are not applicable. See Jefferson County Farm Bureau v. Sherman, 208 Iowa 614, local citation 618, 226 N. W. 182, and In re Estate of Nilson, 201 Iowa 1033, local citation 1036, 204 N. W. 244.

Manifestly, the statute is ambiguous. It is difficult to know which of the two meanings the legislature intended. Consequently, because of the ambiguity, it is necessary to apply rules of construction thereto in order to ascertain the real intent of the legislature.

The rules of statutory construction require that the legislative intention is to be deducted from the language used in the statute, and such language is to be construed generally according to "its plain and ordinary meaning." Jefferson County Farm Bureau v. Sherman, supra, local citation 618.

Moreover, "words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning." Paragraph 2 of section 63, Code, 1931.

At this point, the appellant treasurer argues that the statute for the refund of taxes, under consideration, is in derogation of the common law, and, therefore, should be strictly construed. We find it unnecessary to determine whether or not the statute is in derogation of the common law. For the purposes of this discussion, we assume, without deciding, that it is in derogation of the common law. Section 64 of the 1931 Code provides:

"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code. Its

provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice."

See, also, Chiesa & Co. v. City of Des Moines, 158 Iowa 343, 138 N. W. 922, 48 L. R. A. (N. S.) 899; Peterson Co. v. Freeburn, 204 Iowa 644, 215 N. W. 746. Perhaps when a statute creates a right not existing in common law, and also creates a process to enforce that right, the remedy provided by statute, and not some remedy at common law, must be pursued. See Jefferson County Farm Bureau v. Sherman, supra, local citation 618.

In the case at bar, the right is created by the first sentence of the statute under consideration, and the process is provided in the last sentence of the statute. That process demands that the judgment adjudicating the wrongful collection of the inheritance taxes must be preceded by a fifteen-day notice on the state treasurer, served in the manner and way of an original notice. The statute, therefore, in creating the right is to be liberally construed.

Three sentences make up the entire statute under consideration. Each sentence, and each word and phrase thereof, must, if possible, be given effect. Dorsey v. Bentzinger, 209 Iowa 883, local citation 888 and 889, 226 N. W. 52. As before said, it is contended by the appellant treasurer that the first sentence in the section provides that there must be a final adjudication within the five-year period. If that is true, there would be no need for our italicized phrase in the second sentence, as above quoted. That phrase is as follows: "If the case has been finally determined." By using the second sentence, the legislature created the machinery by which the refund could be made. While in the third sentence, the legislature provided for the notice to be given before there can be an adjudication. Hence, if the appellant's contention is correct that the first sentence provides that there must be an adjudication within the five-year period, the second sentence would be entirely complete without the use of said phrase "if the case has been finally determined".

So, if the appellant treasurer's contention is correct that the first sentence provides for final adjudication within the five-year period, there would be no need for the phrase just quoted from the second sentence. It is to be noticed also that the phrase under consideration in the second sentence is not limited or supplemented by an additional phrase, to wit, "within the five-year period". Clearly, therefore, the legislature intended in the first sentence of the sec-

tion, when it used the words "when within five years after the payment of the tax, a court of competent jurisdiction may determine", etc., to indicate that, if the situation arose by the commencement of the action within the five-year period so that the court within that period or thereafter might determine the question, then the treasurer would be authorized to return the tax, providing there is finally an adjudication. This thought is strengthened by the phrase in the second sentence, many times mentioned, to wit, "if the case has been finally determined", without having coupled therewith the additional phrase suggested "within the five-year period". The words "may determine", as used in the first sentence of the statute, evidently were not intended by the legislature to indicate the existence of a final adjudication, but rather those words were used by the legislature to indicate that there must be, within the five-year period, the existence of a legal possibility that the courts will determine the question either during or after the five-year period. Such possibility is evidenced by the pendency of a good faith suit in a court of competent jurisdiction within the five-year period. If a good faith suit is thus pending in a court of competent jurisdiction within the five-year period, then, within that time, a situation arises where the court "may determine", then or thereafter, "that property upon which an inheritance tax has been paid is not subject to or liable for the payment of such tax."

When considering the first sentence in the section, it is essential to note that the legislature did not say "when, within five years after the payment of the tax a court of competent jurisdiction *has* determined", etc. Nor does that section provide "if, within five years after the payment of the tax a court of competent jurisdiction has determined", etc. On the other hand, it is clearly stated in the statute that the tax may be recovered "when, within five years after the payment of the tax, a court of competent jurisdiction may determine," etc. Consequently, when an action is pending within the five-year period, the court *may determine*, either within or after that period, "that property upon which an inheritance tax has been paid is not subject to or liable for the payment of such tax." In the case at bar, the cause was pending because a petition had been filed in the proper court, and due notice thereof served on the state treasurer within the five-year period, as provided by section 7396, above quoted.

Any other interpretation of the section would bring about con-

fusion and hardship. It is possible to imagine that a case of the kind under consideration might pend in the district and Supreme Courts of the state, and in the Supreme Court of the United States, for a period of more than five years. Under the situation assumed, the claimant may have done everything in his power to bring about an adjudication within the five-year period, but, because of delays for which he is not to blame, there would be no final adjudication within that time. The state of Iowa does not want to keep, in its treasury, funds unlawfully obtained from a taxpayer. We cannot conceive that the state would try to work a hardship upon the taxpayer by making it unduly difficult for him to recover from the state treasurer his money unlawfully held in the state treasury. When enacting the law under consideration, the legislature must have considered this fact. Marinho v. Glen Alden Coal Co., 108 Pa. Super. Ct. 560, 165 A. 506; United Verde Extension Mining Co. v. Koso (C. C. A.) 273 F. 369. A quotation from the Marinho case, supra, while not entirely pertinent to the question now under consideration, will, nevertheless, throw some light upon it. There was the following statute in Pennsylvania: "The board [under the Workmen's Compensation Act], upon petition of any party and upon any cause shown, at any time before the court of common pleas of any county of this Commonwealth * * * may grant a rehearing of any petition upon which the board has made an award or disallowance * * * but such rehearing shall not be granted more than one year after the board has made such award. * * * *"

When considering that statute, the Pennsylvania court said:

"The amendment of section 426 of the Workmen's Compensation Law [the one quoted immediately above] was intended to impose a definite limitation upon the time within which the Workmen's Compensation Board should have authority to consider a petition for a rehearing.

"In the instant case the petition for a rehearing was filed within the year, as provided in the act of assembly, but no action was taken upon it until after the year had expired. Where the claimant acts within the year, he has done all that he can do, and his right to relief should not be defeated because the board fails to act within the year. This would make his right to relief dependent upon the speed or dilatoriness of the board. The filing of the petition within the year tolls the running of the statutory limitation just as the filing

of an original claim petition within the year protects the claimant."

Because of all the circumstances above discussed, it is apparent that the appellee trustee is entitled to recover the taxes wrongfully collected from the Van Vechten estate.

II. But it is said by the appellant treasurer that there must be a reversal in the case at bar because the trustee, who is entitled to the funds, is not the only party plaintiff. Joined with the trustee are the heirs of the Van Vechten estate, who are entitled to the benefits of the fund.

These heirs, however, are simply named in the caption of the petition. They make no claim in the body of the petition that they, as distinguished from the trustee, are entitled to the funds. Their purpose in becoming parties to the petition evidently was to ask, not that they receive the funds, but rather that the trustee receive them. If these beneficiaries were asking that they themselves, and not the trustee, receive the funds, a different situation might be involved, but we do not decide what the rule would be in such event. It is enough to say that under the facts here involved, we will not dismiss the petition for misjoinder.

Wherefore, the judgment and decree of the district court, must be, and hereby is, affirmed.—Affirmed.

All Justices concur, except STEVENS, J., who dissents.

STEVENS, J. (dissenting)—I am unable to concur in the opinion of the majority in this case. As I view the foregoing opinion, it proceeds upon a clear misconception of the character and purpose of section 7396 of the Code of 1931 quoted in the opinion. This section does not in any sense, either in terms or by implication, purport to fix the time within which an action to adjudicate the right of an administrator, executor, or person in interest to a refund of inheritance taxes erroneously or illegally paid shall be commenced. In that sense, it is not, in my opinion, a statute of limitations at all. The legislative history of the act seems to me to be quite conclusive on the subject. The original enactment constituted chapter 63, Laws of the Twenty-ninth General Assembly, which, omitting the title, is as follows:

"Section 1. That when a court of competent jurisdiction has or may hereafter determine that property, upon which a collateral inheritance tax has been paid, is not subject to or liable for the pay-

ment of such tax, so much of such tax which has been overpaid to the treasurer of state, shall be returned or refunded to the executor or administrator of such estate, or to those entitled thereto, when a certified copy of the record of such court showing the fact of non-liability of such property to the payment of such tax has been filed with the executive council of the state, the executive council shall issue an order to the auditor of the state directing him to issue a warrant upon the treasurer of the state to refund such tax.

"Sec. 2. Such order of court shall not be given until fifteen days notice of the application therefor shall be given to the treasurer of state of the time and place of the hearing of such application, which notice shall be served in the same manner as provided for original notices."

The time element was omitted from this act. Authority to refund a tax existed only when preceded by an adjudication by a court of competent jurisdiction. The duty to direct the refund after an adjudication by a court of competent jurisdiction was had rested, in the first instance, upon the executive council. The act was two-fold in character. It assumed that a court of competent jurisdiction might, in some form of action, adjudicate an issue as to the right of the state to demand or retain the tax. This done, the act made it the duty of the executive council to proceed under proper circumstances as directed by section 1 of the act. It also, in effect, limited the authority of the executive council or other officers to refund taxes without a prior adjudication of a court of competent jurisdiction. Perhaps the act would not be deemed to apply to a case in which the error was merely one of computation or otherwise purely clerical in character. Thus, the law remained until 1911 when the laws of the Thirty-fourth General Assembly were enacted. By this act chapter 4, title 7, of the Code relating to collateral inheritance tax was repealed, and chapter 68, Laws of the Thirty-fourth General Assembly, substituted therefor. Sections 1 and 2 of chapter 63 were re-enacted with certain material changes noted below as section 44 of chapter 68. Except as here noted, the change in the verbiage of the two acts is wholly immaterial. It is at this point in the history of the legislation that the time element enters.

The material change in the respective acts to be noted is almost wholly confined to the first two lines. Chapter 351 of the Code of 1931, of which the above section is a part, is much broader and

more comprehensive than preceding collateral inheritance tax laws were. Subject to certain exceptions noted in chapter 351, inheritance taxes are required to be paid in all cases instead of being limited to collateral inheritance taxes alone. We quote the first line of section 7396 as follows: ."When, within five years after the payment of the tax. * * * " This language differs from the language of chapter 63, Laws of the Twenty-ninth General Assembly, in effect only, in respect to the time within which the adjudication by a court of competent jurisdiction must be had. As originally enacted, the corresponding language was as follows: "That when a court of competent jurisdiction has or may hereafter determine. * * * " When the acts are compared and read together, it is obvious that the section in question was never designed as, and is not in any sense, a statute of limitations fixing a time within which actions may be commenced. Instead, it places a limit upon the time within which adjudication may be had. As stated, the original enactment did not limit the time within which a court of competent jurisdiction might adjudicate the right to a refund of the tax. The original purpose of the act was to provide a method by which collateral inheritance taxes, illegally or erroneously exacted, might, upon proper adjudication by a court of competent jurisdiction, be refunded. The present statute merely limits the time within which the right to a refund may be declared by a court of competent jurisdiction. In other words, the statute operates as a limitation upon the time within which the adjudication must be complete, and, in addition, limits the authority of the executive council to proceed under the certification of the record of an adjudication entered more than five years after the payment of the tax. In my opinion, the judgment should be reversed.