SINCLAIR REFINING COMPANY, Plaintiff, v. U. C. BURCH et al., Defendants; MARYLAND CASUALTY COMPANY, Appellant; IOWA STATE BANK AND TRUST COMPANY, Appellee.

No. 46466.

NOVEMBER 14, 1944.

REHEARING DENIED JANUARY 13, 1945.

Miller, Huebner & Miller, of Des Moines, and Jo S. Stong of Keosauqua, for appellant.

Thoma & Thoma, of Fairfield, for appellee.

G. H. Clark, Jr., Special Assistant Attorney General and Counsel for Iowa State Highway Commission.

GARFIELD, J.—This is a companion case to Hercules Mfg. Co. v. Burch, No. 46485, 235 Iowa 568. The principal distinction between the two cases is that in the Hercules case Burch completed the work but here he defaulted.

The contract here, made May 3, 1940, was for grading on a primary-road project in Van Buren county. On May 15th the contractor assigned to Iowa State Bank and Trust Company of Fairfield all sums to become due under the contract. The assignment secured indebtedness which Burch subsequently incurred to the bank upon which there was owing more than the amount still in the hands of the highway commission. On September 16, 1940, at Burch's request, the highway commission declared the contract in default. The balance of the work was relet by the commission to Booth and Olson.

Following Burch's default, Maryland Casualty Company, surety on the contractor's bond in the sum of $22,500, paid claims for labor and material furnished Burch totaling $4,393.25. These claims were then assigned to the surety. During June and July the highway commission paid the Fairfield bank on the Burch contract $17,294.24, ninety per cent of three estimates totaling $19,215.82. Ten per cent of this last figure, $1,921.58, was retained by the commission in accordance with the contract. There was also $1,347.53 unpaid on the Burch contract at the time of his default, in addition to the ten per cent previously retained. The total in the hands of the commission at the time suit was brought was $3,269.11, of which $2,056.33 was ten per cent of the full amount earned by Burch. It was conceded the surety, as subrogee of laborers and materialmen paid by it, was entitled to this $2,056.33. The contest is over the balance of $1,212.78 in the commission's hands. The trial court awarded this amount to the assignee bank. The surety has appealed.

All contentions appellant makes here are disposed of by our opinion in Hercules Mfg. Co. v. Burch, except the claim that since Burch defaulted in performing his contract the entire unpaid amount, not merely the ten per cent retention fund, is made available by section 10320, Code, 1939, for the payment of claimants for labor and material and appellant as their subrogee. In the Hercules case it was not necessary to decide this contention because there Burch fully performed his con-

tract. We there held that the only fund available to claimants for labor and material on a completed contract is the percentage of the contract price which the highway commission is required to retain. The question now before us is whether by reason of section 10320 a different rule prevails where the contractor abandons the work. We think section 10320 does not have the effect appellant claims for it.

The primary rule in interpreting a statute is to ascertain and give effect to the intention of the legislature. Smith v. Thompson, 219 Iowa 888, 896, 258 N. W. 190; Keokuk Waterworks Co. v. Keokuk, 224 Iowa 718, 723, 277 N. W. 291; 50 Am. Jur. 200, 201, section 223; 59 C. J. 948, section 568. In determining the meaning of section 10320 it should be considered in the light of the whole chapter (452) and every other section therein. Wood Bros. Thresher Co. v. Eicher, 231 Iowa 550, 560, 1 N. W. 2d 655, 660; Ahrweiler v. Board of Supervisors, 226 Iowa 229, 231, 283 N. W. 889; 59 C. J. 1042, 1046, section 620. All provisions of the chapter should be considered as parts of a connected whole and harmonized if possible. Brutsche v. Incorporated Town of Coon Rapids, 218 Iowa 1073, 1081, 256 N. W. 914; In re Estate of Van Vechten, 218 Iowa 229, 234, 251 N. W. 729; Smith v. Thompson, supra; 50 Am. Jur. 367, 368, section 363; 59 C. J. 1051, section 621. The purpose or aim of the legislation is also to be considered. Wood Bros. Thresher Co. v. Eicher, supra; 50 Am. Jur. 283, 284, section 303; 59 C. J. 961, section 571.

It is a familiar rule that the manifest intent of the legislature will prevail over the literal import of the words used; that a thing which is within the intention of the lawmakers is as much within the statute as if it were within the letter; and a thing within the letter of the statute is not within the statute unless it is within the intention of the legislature. 50 Am. Jur. 232, 234, 235, section 240; 59 C. J. 964–967, section 573; Sexton v. Sexton, 129 Iowa 487, 488, 489, 105 N. W. 314, 2 L. R. A., N. S., 708; Oliphant v. Hawkinson, 192 Iowa 1259, 1263, 183 N. W. 805, 33 A. L. R. 1433; McGraw v. Seigel, 221 Iowa 127, 132, 263 N. W. 553, 106 A. L. R. 1035.

Section 10320 states:

"Abandonment of public work—effect. When a contractor

abandons the work on a public improvement or is legally excluded therefrom, the improvement shall be deemed completed for the purpose of filing claims as herein provided, from the date of the official cancellation of the contract. The only fund available for the payment of the claims of persons for labor performed or material furnished shall be the amount then due the contractor, if any, and if *said amount* be insufficient to satisfy said claims, the claimants shall have a right of action on the bond given for the performance of the contract.''

Detaching the second sentence of this section, upon which appellant relies, from chapter 452 as a whole, the words ''said amount,'' italicized by us, refer back to ''the amount then due the contractor,'' and purport to give claimants a right of action on the bond only if such amount is insufficient to pay their claims. Considering the chapter as a whole, however, the legislative intent is plain that there is a right of action on the bond if the percentage of the contract price which the public corporation is required to retain (here ten per cent) is insufficient to satisfy claims.

Section 10304 directs that such a bond as appellant signed must provide:

''The principal and sureties on this bond hereby agree to pay * * * all just claims * * * for labor performed or materials furnished, in the performance of the contract * * * when the same are not satisfied out of the portion of the contract price which the public corporation is required to retain until completion of the public improvement * * *.'' '

The bond signed by appellant here contains this identical provision.

Section 10319 provides:

''Unpaid claimants—judgment on bond. If, after *the said retained percentage* has been applied to the payment of duly filed and established claims, there remain any such claims unpaid in whole or in part, judgment shall be entered for the amount thereof against the principal and sureties on the bond. In case *the said percentage* has been paid over as herein provided,

judgment shall be entered against the principal and sureties on all such claims.''

If we are to harmonize sections 10304, 10319, and 10320, the terms ''the amount then due the contractor'' and ''said amount'' found in the later section must be construed to refer to the percentage fund required to be retained.

Further, section 10310 states that the contractor shall be paid not more than ninety per cent of the estimates and at least ten per cent of the contract price will remain unpaid at completion of the contract. As pointed out in our opinion in the Hercules case, section 10311 provides ''the retained percentage of the contract price, which in no case shall be less than ten percent, shall constitute a fund for the payment of claims * * *,'' thus impliedly excluding from claimants funds in excess of the ten per cent. Section 10312 provides for the retention of the ten per cent following completion of the improvement. · This is followed by 10312.1 which states:

'''No part of the unpaid fund due the contractor shall be retained as provided in this chapter on claims for material furnished, other than materials ordered by the general contractor or his authorized agent, unless such claims are supported by a certified statement * * *.''

It could hardly be claimed that the mere use of the term ''unpaid fund due the contractor'' in 10312.1 makes available to claimants more than the percentage required to be retained. Indeed, when we consider there is no provision in chapter 452 that any funds ''shall be retained'' except such percentage, it is apparent the term just quoted refers to the percentage required to be retained. The words in section 10320 upon which appellant relies, ''the amount then due the contractor,'' are quite similar to the term found in 10312.1.

Also, as pointed out in our Hercules opinion, other sections than those hereinbefore discussed plainly refer to the. ten per cent retention fund. Section 10313, under which this suit was brought, provides that such an action is brought ''to adjudicate all rights to *said fund.''* Section 10315 provides that in such an action, ''The court shall adjudicate all claims. Payments *from said retained percentage* * * * shall be made in the following

order * * *.'' Section 10316 directs that ''When *the retained percentage aforesaid* is insufficient to pay all claims * * * the court shall * * * order the claims in each class paid in the order of filing * * *.'' All these terms we have italicized clearly refer to the ten per cent retention fund. The words ''unpaid portion of the contract price'' in section 10317 also seem to refer to the same fund.

As if to remove any doubt as to the amount available for claimants, the legislature stated in section 10322:

''The filing of any claim shall not work the withholding of any funds from the contractor except the retained percentage, as provided in this chapter.''

The meaning appellant would have us give section 10320 is inconsistent with the plain mandate of 10322 and would require us to read into the later section some such provision as ''except, however, where the contractor has abandoned the work.'' Appellant argues that section 10322 ''is subject to the reasonable interpretation that a claimant cannot prevent the contractor from withdrawing funds on earned estimates *during the early stages of the construction* by merely filing a claim with the commission.'' However, 10322 contains no such limitation or exception.

Considering chapter 452 as a whole, it seems apparent that the legislature intended to protect claimants for labor and material by encumbering for their benefit at least ten per cent of the contract price until at least thirty days after the completion and acceptance of the improvement. In addition, the contractor is required to furnish a bond conditioned upon the payment of such claims when they are not satisfied out of the retained percentage. The remainder of the estimates become payable forthwith to the contractor.

The purpose of the legislature in enacting chapter 452 seems to have been to enlarge the field of competition among bidders upon public contracts to include those who do not have the resources to carry out such a project without pledging the portion of the contract price over and above the retained percentage. Thus competition would not be limited to the relatively few who have the advance resources to carry out a large contract

but would include those able to finance the project by assigning the contract subject to the provision that at least ten per cent be withheld until completion.

The effect of our holding in Federal Surety Co. v. Des Moines Morris Plan Co., 213 Iowa 464, 467, 239 N. W. 99, 100, seems to require the construction we have placed on these statutes. We there held:

"As to such retained percentage, liens attach in the order of filing claims. The remainder of the monthly estimate becomes payable forthwith to the contractor. * * *

"*It has been the policy of the statute not to encumber these installments.* There was, therefore, no lien upon the installments which were assigned to the .Morris Company and which passed through its hands." (Italics supplied.)

Section 10320 says:

"The only fund available for the payment of the claims * * * shall be the amount *then due the contractor * * *.*"

If we were to be guided solely by the literal meaning of the words we have italicized, upon which appellant relies, to the exclusion of the remainder of chapter 452, even the retained percentage would not be available to claimants because it would not be "*then due* the contractor." Appellant, in effect, asks us to construe these words to mean "the unpaid portion of the contract price." We think, in order to harmonize section 10320 with other provisions of chapter 452, and with the chapter as a whole and to carry out the intent of the lawmakers, "the amount then due the contractor" means the retained percentage of the contract price. Such portion in this case is ten per cent.—Affirmed.

MANTZ, C. J., and BLISS, OLIVER, and HALE, JJ., concur.

WENNERSTRUM, J., concurs in result.

MULRONEY and SMITH, JJ., dissent.

MILLER, J., takes no part.

MULRONEY, J. (dissenting)—I respectfully dissent. Now we have the spectacle of the defaulting contractor, able, in spite

of his default, to assert a prior and paramount claim to ninety per cent of the funds still in the hands of the commission as against claimants with filed claims totaling more than all the funds earned by the defaulting contractor and still in the hands of the commission. That is exactly what the majority holds when you strip the case of the elements of subrogation of claimants' rights, and assignment of the contractor's rights about which there is no argument. This case is a companion case to Hercules Mfg. Co. v. Burch, 235 Iowa 568, involving the same contractor, surety, and bank, but here the contractor abandoned the contract before completion. There, as I pointed out in my dissenting opinion, the majority actually held that the contractor who completed his contract could take ninety per cent of the funds still in the commission's hands after completion of the contract, and the claims of laborers and materialmen who did the work and furnished material for the completion of the contract could go unpaid.

Here the defaulting contractor, under the majority holding, is given the same right as to the funds earned and unpaid up to the time of his default. The majority arrives at this conclusion in the face of a statute that in clear, unmistakable language states that all the funds due the contractor at the time of the default and still in the commission's hands shall be available for claimants. In my dissent in the Hercules case I pointed out that the majority opinion was based upon construing statutes that provided for retention duties as statutes that provided the only funds to which claimants could resort after the contract was completed. Well, here is a statute that provides what fund will be available for claimants of a defaulting contractor, and the majority says the legislature just did not mean what it said.

Section 10320 of the 1939 Code provides:

"When a contractor abandons the work * * * the improvement shall be deemed completed for the purpose of filing claims as herein provided, from the date of the official cancellation of the contract. *The only fund available for the payment of the claims of persons for labor performed or material furnished shall be the amount then due the contractor, if any,* and if said amount be insufficient to satisfy said claims, the claimants shall

602

have a right of action on the bond given for the performance of the contract."

How could the legislature possibly·have spoken plainer? But the majority opinion states the legislature did not mean that all the amount due the contractor at the time of abandonment would be available for claimants but only a percentage of the amount (not·less than ten per cent) would be available for claimants and the balance must still be paid over to the defaulting contractor. In other words, the statutes of retention, sections 10310 to 10312, which apply only to contracts requiring more than thirty days for completion, will govern the interpretation to be placed upon this statute that provides in clear, unambiguous language that the fund available for the payment of claims against a defaulting contractor on any contract will "be the amount then due the contractor, if any."

I feel that the majority has left the field of judicial interpretation and entered the field of judicial legislation. I would reverse.

·SMITH, J., joins in this dissent.