SPENCER PUBLISHING COMPANY, appellant, v. CITY OF SPENCER, CLIFF BOWMAN, clerk of said municipality, et al., defendants-appellees; JOHN LYNCH et al. (including IOWA ASSOCIATION OF MUNICIPAL UTILITIES), intervenors-appellees; CLIFF BOWMAN, also intervenor-appellee.

No. 49490.

(Reported in 92 N.W.2d 633)

48

OCTOBER 14, 1958.

James & Greer, of Spencer, for appellant.

Cornwall & Cornwall, of Spencer, for defendants-appellees and intervenors-appellees John Lynch et al.

Loth & Melton, of Fort Dodge, for defendants-appellees and intervenors-appellees John Lynch et al. and A. L. Bender et al.

J. I. Hossack, of Spencer, for defendant City of Spencer and intervenor Cliff Bowman.

LARSON, J.—All parties to this action seek a declaratory judgment construing section 618.11 of the Iowa Code as amended by chapter 266 of the Fifty-seventh General Assembly.

There is no controversy between the parties with reference to the facts, and all agreed to the method of procedure followed in the court below. The sole issue is whether, due to the amendment, this section now authorizes and empowers the state printing board to order and direct municipalities as to the style, manner and form they must follow when making required publications in newspapers, especially when a controversy arises between the officers and the newspaper as to these matters.

The trial court sustained defendants' contention that the amendment inserting the words "style, manner or form", after the comma in line 9 of section 618.11, did not change the character of the section which provided for compensation for public printing in newspapers and for the settlement of compensation disputes arising thereunder. We agree.

The Spencer Publishing Company brought this action against the City of Spencer, Cliff Bowman, clerk, and the Spencer Municipal Utilities, John M. Lynch, Roy W. Fenske, and George W. Haygarth, trustees of said utilities, as defendants. Municipal laws require certain proceedings and notices to be published in local or official newspapers. They are sometimes published in tabular form, which is the printing of one item only on each line, as illustrated by the following:

Farmers Bank, interest........................................$562.50
Tipton State Bank, interest...............................$112.50

At other times these items are published as straight or display, as illustrated by this form: Farmers Bank, interest, $562.50; Tipton State Bank, interest, $112.50.

While the state printing board has recommended and approved the tabular form for such publications, it does not appear that it has ever attempted to assume any legal authority to require it except as to state printing referred to in chapter 15, Code, 1958. The laws involved herein requiring publication

do not set forth or designate the particular form to be used, although form is mentioned in section 618.14 which provides that the governing body of any municipality or other political subdivision of the state is *authorized* to make publication, *as straight matter* or display, of any matter of general public importance, in one or more newspapers.

During the past years the plaintiff, a qualified newspaper, has been publishing required and authorized matter for the defendants, sometimes in tabular form and sometimes as straight line.

On this particular occasion the city and the utility board, under chapter 368A, especially sections 368A.3 and 368A.24 respectively, submitted summaries of their meetings to the plaintiff for publication and demanded that plaintiff print same as straight-line matter. Plaintiff declined, contending it should be printed tabular. Furthermore, plaintiff contended that when such a dispute arises it must be submitted to the state printing board, whose decision is final under section 618.11 as amended by chapter 266, Acts of the Fifty-seventh General Assembly.

Defendants' position is that complete discretion has always been left in the local public officers, and that the state printing board has been given no jurisdiction to settle any other controversy but one as to compensation *after* the publication is completed.

It is conceded the straight form of printing is less expensive than the tabular form, the latter in this instance being almost twice the cost of straight-line printing. This is, of course, not a controlling factor, although that fact might be of some importance in our effort to determine the legislative intent in amending this particular section of the Code.

■ I. The rule in interpreting a statute, we have said many times, is to give effect to the intention of the legislature. Sinclair Refining Co. v. Burch, 235 Iowa 594, 596, 16 N.W.2d 359, 361, and authorities cited therein. In determining the meaning of the amendment the whole section must be considered, and the amended section 618.11 must be considered in the light of the whole chapter and every other section therein. Wood

Brothers Thresher Co. v. Eicher, 231 Iowa 550, 560, 1 N.W.2d 655, 660. Always the purpose and aim of the legislation must be considered. Sinclair Refining Co. v. Burch, supra; 50 Am. Jur. 283, section 303.

It is a well-known, as well as a recently-recognized, rule that the manifest intent of the legislature will prevail over the literal import of the words used. Dingman v. City of Council Bluffs, 249 Iowa 1121, 90 N.W.2d 742. Words standing alone, as well as technical definitions and rules of grammatical construction, are often inconclusive.

Perhaps the primary rule of construction of statutes by the courts is to ascertain and declare the intention of the legislature, and in case of uncertainty or ambiguity it may often be ascertained by historical investigation, especially when a settled and definite legislative policy is apparent from a series of prior enactments regarding the matter. City of Emmetsburg v. Gunn, 249 Iowa 297, 86 N.W.2d 829, and cases cited therein. Many cases may be cited as to these pronouncements, but we refer only to a few. McKinney v. McClure, 206 Iowa 285, 220 N.W. 354; Hansen v. Henderson, 244 Iowa 650, 56 N.W.2d 59; Bowman v. City of Davenport, 243 Iowa 1135, 53 N.W.2d 249.

It must be noted at the outset that chapter 266, Acts of the Fifty-seventh General Assembly, standing alone, gives no light upon the purpose or the meaning of the words used in context. The title simply states, "An Act to amend section six hundred eighteen point eleven (618.11), Code 1954, relating to the publication and posting of notices." It does not refer to controversies, or the powers and duties of the officers. Only one section appears in the Act, which provides that section 618.11, Code, 1954, "is hereby amended by inserting after the comma in line nine (9) the following: 'style, manner or form,' ".

Section 618.11, as it now appears, is as follows:

"The compensation, when not otherwise fixed, for the publication in a newspaper of any notice, order, citation, or other publication required or allowed by law, shall not exceed one dollar and fifty cents for one insertion, and one dollar for each subsequent insertion, for each ten lines of brevier type. In case of controversy or doubt regarding measurements, *style,*

*manner or form, said controversy* shall be referred to the state printing board, and its decision shall be final." (Emphasis supplied.)

It must be noted that the original provisions relating to this subject appeared in 1873 as section 3832. This statute has undergone changes several times, but a careful study of this law clearly disclosed that it has always been a pure fee statute. The first rate of pay was fixed for a "square of ten lines of brevier type or its equivalent." This language relating to an equivalent was bound to give rise to controversy, and we had to deal with it in the case of Brown & Co. v. Lucas County, 94 Iowa 70, 73, 62 N.W. 694, 695. We said at that time: "We think the legislative intent was, not to fix a compensation for filling a certain space with printing, of whatever kind, but to fix a compensation for a particular space of a particular kind of printing, and make it the standard by which other kinds of printing could be measured and compensated. It is fair to presume that the compensation fixed was designed as just for a square of ten lines in brevier type of straight work." Contention was there made that if smaller type were used, more matter could be printed in the same space and the cost of printing would be greater, while if a larger type were used, less would be printed in the square, costing less, but in each instance the compensation allowed by the legislature would be the same, thus the controversy. Further changes were then made by the legislature in order to clarify and provide for a fair and uniform fee for public printing.

In 1937 section 11106, Code, 1935, was amended to eliminate the provisions for columns and "equivalents." Chapter 226, Acts of the Forty-seventh General Assembly. At that time the legislature added what is now the last sentence in section 618.11, which clearly provided that compensation controversies between the public officials and the newspaper over "measurements" should be referred to the state printing board for settlement. The printing board became the referee to adjust differences in regard to printing charges. This seemed wise, for it was the body best trained to understand and fairly decide these questions. But the statute only made reference to disputes relating

to measurements, and left disputes as to fees for different style, manner or form in question. It is easy to see why, in view of the well-known rule, that the mention of one is the exclusion of other areas.

In the light of this history, we have no doubt that until the amendment by the Fifty-seventh General Assembly section 618.11 was solely a compensation statute which purported to restrict and govern charges which could be made for public printing. It also provided a fair and just manner of settling controversies over *measurements* for work done.

II. Plaintiff's position is that from the plain as well as the technical meaning of the words "style, manner or form", the legislature meant to place all controversies in those fields in the hands of the printing board for settlement. It refers us to Webster as to the meaning of these words. This broad interpretation would involve and include controversies, such as we have in the case at bar, *before* printing.

The matter, of course, must be resolved by considering the whole section both before and after the amendment. Certainly, out of context the intent of the legislature cannot be determined.

III. The rule is well settled that an amended Act is ordinarily to be construed as if the original statute had been repealed and a new and independent Act in the amended form had been adopted in its stead. Benschoter v. Hakes, 232 Iowa 1354, 1359, 8 N.W.2d 481, 485. But we have also recently said that where an amendment leaves certain portions of the original Act unchanged, such portions are continued in force, with the same meaning and effect they had before the amendment. Ferguson v. Brick, 248 Iowa 839, 843, 82 N.W.2d 849, 851, and citations therein.

We see here no apparent intention to depart from the objects and purpose of the section, i.e., to resolve disputes between the public officials and the newspapers as to fees due them for work done. Prior to the amendment the section specifically related to disputes as to measurement only, and it is fair to believe other disputes as to the fees due, not only as it related to measurements, but due to the style, manner and form, were giving the authorities some concern.

If the legislature wished to extend the power of the printing board to settle disputes of this type, the obvious place to extend that authority was in section 618.11.

■ IV. It is a rule of construction, here applicable, that changes made by a revision of a statute will not be construed as altering the scope and purpose of the law unless the legislature's intention to do so is clear and unmistakable. If the amended statute is ambiguous or susceptible of two constructions, reference may be had to prior statutes for the purpose of ascertaining the intent of the legislature. Benschoter v. Hakes, supra; Dennis v. Independent School District, 166 Iowa 744, 750, 148 N.W. 1007, 1009; Hunter v. Colfax Consolidated Coal Co., 175 Iowa 245, 157 N.W. 145, L. R. A. 1917D 15, Ann. Cas. 1917E 803; 50 Am. Jur., Statutes, section 294.

Section 618.11 is solely a compensation statute, and always has been. It was recognized by the Code editors as such. They designated it as "Fees for publication", and the textbooks and citators refer to it and its history as a fee section. 42 Iowa Code Annotated, Civil Practice and Procedure, pages 168, 169. The attorney general in several opinions refers to it as a section governing only compensation and preventing newspapers from charging more than that prescribed for public printing, 1898 O. A. G. 104, and the learned trial court found it so in accordance with our past pronouncements.

It must, therefore, be concluded that insofar as the statute's history is concerned, the amendment must be found to relate to the factors to be considered by the printing board in settling disputes as to compensation for services already rendered.

■ V. We next turn to the history of this amendment to see if a contrary intention is clear and unmistakable. House File 195, originally filed, was entitled, "AN ACT to amend section 15.6, Code 1954, relating to the duties of the printing board in connection with the printing of official publication of notices." The explanation stated: "This amendment is being offered to clarify the wording of this particular section of the Code and sets out in detail the types of publication which the printing board is authorized to publish." Had this amendment to section 15.6 of the Code been enacted, it would have been very persuasive as to the extent of authority placed in the

printing board contended for by plaintiff. However, after its introduction, the House deferred consideration of this bill. Thereafter, an amendment to the explanation was filed, stating in part: "It does in no manner alter or increase the cost of legal publication." A few days later, the bill was further amended by striking the title and inserting in lieu thereof: Section "six hundred eighteen point eleven (618.11) relating to publication and posting of notices", and by striking all of section 1 of the proposed Act and inserting the following: "Amend section six hundred eighteen point eleven (618.11), Code 1954, by inserting after the comma in line nine (9) the following: 'style, manner or form.' " It was then adopted and the bill passed both houses in that form rather than as originally proposed.

Such history seems to belie plaintiff's contention that this action of the legislature was intended to grant new and different power and authority rather than to clarify or extend the jurisdiction placed in the printing board by section 618.11 in 1937. Defendants, logically we think, insist that such an expansion of the powers and duties of the state printing board should appear in chapter 15, and that if new and different powers and duties were to be placed on the board, the legislature would have placed them in section 15.6 of the Code, not section 618.11.

It is most persuasive that the legislation contemplated *no increase* in cost of public printing, but appears to authorize the printing board to take into account the troublesome "equivalent" by considering style, manner and form, as well as measurements in deciding a fee quarrel.

As pointed out by the trial court, chapter 618 deals entirely with statutory requirements as to public printing, and nowhere therein does it prescribe or require a style, manner or form. In fact, as already pointed out, section 618.14 appears to authorize the selection of straight-line printing.

We must conclude, therefore, that no clear and unmistakable intention of the legislature appears such as is necessary to vest in the state printing board the right to finally determine, *prior to publication,* any controversy regarding the style, manner or form of publication.

56

We are convinced the extension of authority in the printing board, if such it was, was specifically restricted to controversies as to fees arising after publication. Had it been, as plaintiff contends, a new right to question local public officers' discretion on how to print public matter, it would open up a new and extremely far-reaching power, as well as duty, in the state printing board, with little direction. Such intention by a wise and able legislature is not presumed. It would also seem obvious that such an extension of authority, if intended, would be placed in chapter 15 relating to the printing board's functions, powers and duties.

VI. There were other minor issues raised relating to the constitutionality of the law as contended for by plaintiff and the right of others to intervene. None of these issues need be considered here for it is our judgment that the legislature never intended the construction of section 618.11 insisted upon by appellant. The trial court's decision that the amendment only vests in the state printing board power to finally determine any controversy that may arise with reference to compensation involving measurement, style, form or manner of publication must be affirmed.—Affirmed.

All JUSTICES concur.