Robert Hocking, Plaintiff-Appellant, v. A. C. Rehnquist, E. F. Rehnquist, Ruth Rehnquist, Dorothy Rehnquist, Kenneth W. Shaw, and James T. Watson, Jr., d/b/a Mt. Carmel Sand and Gravel Company, a Partnership, and Neal K. Berberich, Defendants-Appellees.

Gen. No. 67–87.

Fifth District.

October 22, 1968.

Rehearing denied November 14, 1968.

White & Aulvin, of Mt. Carmel, Conger, Elliott & Fechtig, of Carmi (John L. Aulvin and Ivan A. Elliott, Jr., of counsel), for appellant.

Gosnell & Benecki, of Lawrenceville (Maurice E. Gosnell, of counsel), for appellees.

EBERSPACHER, P. J.

This is an appeal by the plaintiff from a judgment for the defendants in an action for personal injuries.

The complaint filed herein contained two counts; the first count alleged negligence upon the part of the defendants and the second count alleged willful and wanton misconduct on the part of the defendants. The court directed a verdict for the defendants on the willful and wanton count. The jury returned a verdict for the plaintiff for $34,000 on the negligence count and also returned a special interrogatory finding the plaintiff guilty of contributory negligence. The court entered judgment for the defendants. Post-trial motions filed by the plaintiff were denied. The plaintiff has appealed from the court's judgment.

Two issues are presented by the plaintiff in his appeal. The first is whether the court erred in directing the verdict for the defendant on the willful and wanton count. The second is whether the court erred in setting aside the jury verdict on the negligence count and entering judgment for the defendants; or in the alternative whether plaintiff is entitled to a new trial on that count.

The occurrence as revealed by the testimony happened shortly after noon on July 1, 1964, on a county blacktop road running between Keensburg and Belmont, Wabash County, Illinois. The plaintiff, Robert Hocking, a farmer, lived near the scene of the occurrence. Shortly before noon the plaintiff and Roy Perry, a friend of the plaintiff, left the plaintiff's residence to combine wheat for a neighbor. The plaintiff drove the combine and

420

Perry followed in a small truck. They proceeded westward on the blacktop. The blacktop extends generally westerly from Keensburg until it reaches the plaintiff's residence and then gradually curves to the northwest with a gradual decline from the curve. The plaintiff's residence is located on the south side of the curve. A small barn is located across the road from the plaintiff's residence. Westwardly from the curve the road is straight for at least 2,000 feet. The road is designated as 20 feet wide.

At a point between 700 and 1,300 feet west of the plaintiff's residence, the witnesses being in disagreement as to the exact distance, the plaintiff signaled Perry to pull off onto the right shoulder. The plaintiff parked the combine on the right shoulder and the truck driven by Perry was parked behind the combine. Again there was conflicting testimony as to whether the combine was completely off the road or whether a portion of it extended over the road. The testimony here ranged from the combine being completely off the road to testimony that the upper portion or header of the combine extended three feet onto the road.

The plaintiff had apparently stopped the combine when he observed his wife coming from the east in the family automobile. Mrs. Hocking was returning from the bank in Mt. Carmel where she had obtained cash to pay the farmhands. By any means, Mrs. Hocking pulled the automobile off on the opposite (south) shoulder. The front of the automobile was approximately opposite or parallel with the front of the combine. Again there was a dispute among the witnesses as to the exact location of the automobile. Here the testimony ranged from the automobile being completely off the road to it being 2–4 feet on the road.

The plaintiff crossed the road and talked with his wife through the driver's window. During the time that the plaintiff was talking with his wife, a pickup truck with a

camper safely passed headed east, between the same physical obstructions as were present when defendant subsequently approached.

Then the defendant's truck approached from the east heading west. The truck was equipped with a tank and asphalt spraying equipment. The widest portion of the truck measured seven feet, ten inches. At the time it contained a capacity load of road oil. As the truck passed between the combine and automobile the plaintiff was struck and severely injured. Although there is a difference of opinion as to the speed of the truck, there is no dispute that the defendant driver of the truck did not sound his horn and did not apply his brakes.

■ ■ Turning first to the question of whether the court erred in granting the directed verdict for the defendants on the willful and wanton count, we are guided by the recent Supreme Court decision in Pedrick v. Peoria & Eastern Ry. Co., 37 Ill2d 494, 229 NE2d 504 (1967). In Pedrick the Court stated:

> "In our judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

In reviewing the evidence in order to apply the test, the least that may be said is that there is disagreement as to nearly every fact necessary to determine the basic issue of whether the defendant was guilty of willful and wanton misconduct. Although there is agreement as to the width of the road and the width of the truck there is dispute, i. e., a question of fact, as to whether the combine extended over the road, and if so how much, where Mrs. Hocking's car was parked in relation to the road, whether the plaintiff was standing on the road or the shoulder, the distance from the curve to the point of

collision, the distance at which the defendant either did or could have observed the obstacle, if indeed there was one, in his path, and the speed at which the defendant approached the scene.

■ ■ The resolution of all these basic facts, is of course, necessary before a determination can be made of whether the defendant is guilty of willful and wanton misconduct. It is quite conceivable under the multitude of variables presented in the instant case that the jury could find that the defendant's action amounted to willful and wanton misconduct. Even if the jury were to find that one or both of the plaintiff's vehicles extended over the highway, if the jury were also to find that the defendant, after knowledge of the impending danger failed to exercise ordinary care to prevent the collision it would be justified in finding the defendant guilty of willful and wanton misconduct. This is not new law in Illinois. Schneiderman v. Interstate Transit Lines, Inc., 394 Ill 569, 69 NE2d 293; Wallace v. Radovick, 55 Ill App2d 264, 204 NE2d 835 (1965) ; Walsh v. Gazin, 316 Ill App 311, 316, 45 NE2d 95 (1942) ; Kunz v. Larson, 15 Ill App 2d 126, 135, 145 NE2d 746 (1957). Here there is ample evidence that defendant Berberich, the driver of the truck, could have observed whatever hazard was present, at a distance in which he could have taken such action as was necessary to avoid the occurrence. Furthermore, even under the testimony most favorable to defendants regarding obstructions extending onto the 20-foot surfaced highway, there was room for the truck to pass safely. Under such circumstances the question of whether there was willful and wanton misconduct on the part of the defendant driver was a question for the jury, and the verdict should not have been directed.

Turning next to the remaining allegations of error, the defendant complains, among other things, of the wording of the special interrogatory and the giving of defendant's Instructions Nos. 4 and 5.

423

The plaintiff contends that the court erred in giving defendant's Instruction No. 8, a special interrogatory which provided as follows:

"The Jury will from the evidence and under the instructions of the Court answer the following question on the form handed you herewith for that purpose by writing under the question either 'yes' or 'no' and each Juror will sign his or her name following said answer on said form:

" 'Question: Do you find from the greater weight of the evidence in this case that Plaintiff was free from negligence at and immediately prior to the occurrence involved in this cause, which proximately caused or contributed to cause his injury?' "

The specific objection of the plaintiff is that the interrogatory was drafted in a confusing negative form and used the phrase "free from negligence" which was inconsistent with the other instructions and implied that the standard to be applied to plaintiff was greater than the standard of ordinary care.

We have examined all of the instructions given by the court. From such examination we find that separate instructions were given defining ordinary care, negligence and contributory negligence. However the interrogatory, rather than using the term "contributory negligence" queries the jury as to the plaintiff being "free from negligence."

Although we do not hold this inconsistency to be reversible error in itself, we do feel that such an interrogatory could tend to confuse the jury. Instructions are read and should be viewed as a connected series. Instructions to the jury should be simple, brief, impartial and free from argument. Supreme Court Rule 240, chapter 110, Ill Rev Stats 1967. By the same token, interrogatories should contain a single direct question and should not be repetitious, misleading, confusing or

424

ambiguous. The interrogatory should, of course, use the same language or terms as are contained in the instructions. The interrogatory given in the instant case fails in this regard.

██ ██ Defendants' Instruction No. 4 was in IPI Form 60.01, quoting a portion of paragraph 185, chapter 95½, Ill Rev Stats 1963, as follows:

> "Upon any highway outside of a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main-travelled part of the highway when it is practical to stop, park or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon such highway."

Even though the evidence is clear that there was a clear and unobstructed width of the highway between the standing vehicles and that a clear view of the stopped vehicles was available to defendant truck driver from a distance of 200 feet, it was within the jury's province to determine from the evidence whether it was practical to park the vehicles off the main travelled part of the highway in view of the evidence that they were parked in part on the main travelled part of the highway. While it is not negligence to park on the shoulder either under the statute or the common law, Kennedy v. Burnett, 1 Ill App2d 206, 211, 117 NE2d 303, parking on the main travelled part of the highway when it is practical to park off the main travelled portion may be evidence of negligence. As a result, there was no error in giving the instruction.

Defendants' Instruction No. 5 as given by the court quoted a portion of paragraph 172, chapter 95½, Ill Rev Stats 1963, as follows:

"Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

The plaintiff urges that the instruction is inapplicable under the evidence of the case or in the alternative that the instruction is incomplete in that it omitted the converse duty of a driver approaching a pedestrian upon a roadway. We agree with the plaintiff. From the evidence there is no dispute that the plaintiff had completed his crossing of the highway prior to the approach of the defendant's truck. The evidence is conflicting as to whether the plaintiff was standing on the shoulder or the road, but there is no evidence that plaintiff was in the act of crossing, and the fact that plaintiff had previously crossed before defendants' driver came upon the scene cannot be said to justify the giving of the pedestrian crossing instruction. Insofar as defendants were concerned, plaintiff was simply a man standing either on or at the edge of the main travelled portion of the highway. There was no evidence that there was any crosswalk in the entire length of the road from Keensburg to Belmont. The instruction as given could only serve to confuse the jury. The driver of a motor vehicle does not have an absolute right-of-way at places other than crosswalks.

The instruction omitted subsection (d) of the same section which provides as follows:

"(d) Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any

roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

██ ██ If a crosswalk instruction is to be given, it should include the statutory duty of the driver to use due care as provided in subsection (d) of section 172, chapter 95½, Ill Rev Stats 1963. Even a pedestrian is not bound to look for traffic proceeding in the wrong lane of traffic. Williams v. Yellow Cab Co., 11 Ill App2d 112, 136 NE2d 582. When this section of the statute is read as a whole, it is clear that a vehicle does not have the right-of-way over pedestrians under all circumstances. (Also see Parkin v. Rigdon, 1 Ill App2d 586, 589–590, 118 NE2d 342 (1954).) However, this is not the import of the defendant's Instruction No. 5. Contrary to the assertion of the defendants, we find that the plaintiff's objection to the instruction was both timely and adequate.

In view of the erroneous giving of Instruction No. 5 and the confusing language of the special interrogatory, the plaintiff is entitled to a new trial on the negligence count. Accordingly, the judgments as to both counts of the complaint are reversed and the cause remanded for a new trial.

Reversed and remanded.

GOLDENHERSH and MORAN, JJ., concur.