James W. HEDGES, Appellee,

v.

Ronald Gene CONDER, Appellant.

No. 53200.

Supreme Court of Iowa.

April 8, 1969.

Eugene Davis, of Duncan, Jones, Riley & Davis, Des Moines, for appellant.

Oscar Jones, of Rockwell & Jones, Des Moines, for appellee.

MASON, Justice.

Defendant appeals from judgment on an adverse jury verdict in an action brought by James W. Hedges for injuries sustained when struck by defendant Ronald Gene Conder's automobile in the Des Moines business district.

Three issues were presented at trial: (1) Whether defendant was entitled to a directed verdict, (2) Whether the court should have instructed that plaintiff was negligent as a matter of law and (3) Admissibility of the opinion of a witness offered as an expert as to speed based on tire marks.

Defendant in motion for directed verdict at the close of plaintiff's evidence asserted that plaintiff was negligent as a matter of law and it was a proximate cause of his injuries. The motion was overruled. In renewing this motion at the close of all evidence defendant added as a ground that plaintiff's undisputed violation of a Des Moines municipal ordinance constituted negligence as a matter of law which was a proximate cause of his injuries. After this motion was overruled defendant moved to withdraw from the jury any issue as to his burden of proving plaintiff's negligence because of his violation of this municipal ordinance.

When this motion was denied defendant made timely request for instructions embracing this theory of his affirmative defense and objected to the court's refusal to give them.

The court overruled defendant's motion for judgment notwithstanding the verdict based upon his contention plaintiff's negligence was a proximate cause of his injuries as a matter of law and his alternative motion for new trial based on submission to the jury the issue of plaintiff's negligence by reason of violation of the municipal ordinance and state statute as a question of fact and in receiving over defendant's objection the expert's opinion as to speed.

Defendant's appeal challenges the correctness of these rulings:

Rule 243(b), Rules of Civil Procedure, provides:

"If the movant was entitled to have a verdict directed for him at the close of all the evidence, and moved therefor, and the jury did not return such verdict, the court may then either grant a new trial or enter judgment as though it had directed a verdict for the movant."

I. Keosauqua Way in Des Moines is a six-lane asphalt street with two-way traffic running northwesterly and southeasterly. The northeast lane next to the curb is 17 feet wide, the other lanes 11 feet. The point of the accident giving rise to this lawsuit is within a business district having a speed limit of 25 miles per hour. The Reppert building where plaintiff was employed as a route salesman is located on the east side of Keo, just south of Eleventh Street, a narrow street having the appearance of an alley without sidewalks. There are no marked crosswalks on Keo at Eleventh Street.

Before the accident plaintiff had been employed at Reppert's Retail Merchant Delivery over thirty years. For the last three of those years it had been the company's policy to have plaintiff stop traffic four to five minutes each evening to assist its trucks in entering Keo from the Reppert building during the rush hour from about 4:45 to 5:30, a period when traffic on Keo is "jam packed, about bumper to bumper".

About 5:10 December 21, 1965, as it was getting dark plaintiff proceeded with a flashlight onto Keo to stop traffic. As he walked to the sidewalk there was no traffic in the curb lane. The weather was clear and dry. The street lights and car lights were on. He held up his hand, waved the flashlight and waited until the first car in the middle lane was completely stopped and then proceeded west to the white line dividing the curb lane from the second lane. Although traffic was moving in the inside or third lane, plaintiff was interested in stopping traffic only in the curb and middle lanes as the Reppert trucks were to turn right and go west on Keo.

There was a full line of traffic behind the first car plaintiff had stopped in the middle lane. As he took a step or two east back toward the building, into the curb lane to call to the trucks to come out of the drive, he was struck.

Defendant, driving home from work in a 1963 Ford 6-passenger Country Sedan station wagon, had stopped at the stop light at Ninth Street behind a car. After the light changed he proceeded northwesterly on Keo in the second lane from the curb moving with the traffic approximately four to five car lengths behind the preceding car. He testified that as he approached the Reppert building area he noticed the brake lights of the preceding car come on, when two or three car lengths behind he started a gradual lane change into the curb lane. When approximately at the rear bumper of the car that was stopping or stopped defendant noticed a person moving east near the right front headlight of the other car. Defendant said he was unable to see plaintiff before that moment because the car that was stopping or stopped had obstructed his view. Defendant hit his brakes hard, the car slowed some but struck plaintiff with its front right center. Plaintiff went over the right front fender and was carried for a distance as the car continued to move after the impact, causing the injuries for which he seeks recovery. Defendant estimated his left wheel marks were 1½ to 2 feet to the right of the white dividing line, putting him in about the center of the driving area of the curb lane.

An investigating officer called to the scene testified as to skid marks in the street beginning south of Eleventh. On the left side they measured 46 feet 11 inches and on the right side 49 feet 11 inches. From his investigation he was unable to determine the point of impact.

Plaintiff described his own position after he had taken a step or two back into the curb lane before the impact as facing the building or toward the curb lane with his head turned at a slight angle. He first caught a glimpse out of the corner of his eye of defendant's car as it pulled out of the middle traffic lane probably 40 to 50 feet from him "coming at a fast rate of speed". He estimated defendant's speed as over 25 or 30 miles per hour but refused to state how much. Plaintiff waved the flashlight across the pavement, held up his arms and waved for defendant to stop. Other than the arm waving plaintiff admits he did not attempt to move at all from the time he first saw defendant until he was struck.

Clarence McGuire, then employed by Reppert's, was the driver waiting for plaintiff's signal to come from the garage onto Keo. As an eyewitness he heard a tire squeal, glanced around, saw defendant's car coming and the impact. He estimated defendant's speed when he first saw him as "roughly around 25, 30 miles per hour".

Jack L. Behl, employed by the business next door south of Reppert's, was the other eyewitness. From this building he first saw defendant's car "coming out of the lane, swerving into the middle lane" and estimated defendant was going between 25 and 35, but would not say it was 35 as he felt without getting in the car himself and trying it he would not know exactly.

Defendant's best judgment as to his speed was 25 miles an hour or "it could

have been a little more maybe. I don't know. I am not sure. I was moving along with the traffic." On cross-examination defendant thought he could have been going between 25 and 30 at the most.

In addition to the direct evidence from plaintiff, defendant and two eyewitnesses, plaintiff offered the opinion of George W. Brown, an expert as to speed, that defendant's car was traveling 31 miles per hour at the time the skid marks began and 38 miles per hour when the brakes were first applied.

II. As indicated, defendant alleged in amended answer plaintiff was negligent "in walking within Keosauqua Street or crossing same other than in a crosswalk in a business district in violation of Sec. 30–33.01 of the Municipal Code of Des Moines, 1962, * * *" and "in failing to yield the right of way to defendant's vehicle when plaintiff was within Keosauqua Street, other than in a marked or unmarked crosswalk, in violation of Section 321.328 of the Iowa Code and Section 30–33 of said Municipal Code."

Other specifications of plaintiff's negligence asserted in answer are not involved in this appeal.

Section 30–33.01 of the Municipal Code, 1962, read into the record without objection, provides:

"Prohibited Crossing. Between adjacent intersections at which traffic-control signals are in operation, pedestrians shall not cross at any place except in a crosswalk. No pedestrian shall cross a roadway other than in a crosswalk in any business district."

Section 30–33 provides:

"When Pedestrian Shall Yield. Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

"Any pedestrian crossing a roadway at a point where a pedestrian tunnel or overhead pedestrian crossing has been provided shall yield the right-of-way to all vehicles upon the roadway.

"The foregoing rules in this section have no application under the conditions stated in Section 30–33.01 when pedestrians are prohibited from crossing at certain designated places."

These municipal code sections are patterned after section 321.328, Iowa Codes, 1962, 1966, which provides:

"Crossing at other than crosswalk. Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway except that cities and towns may restrict such a crossing by ordinance.

"Any pedestrian crossing a roadway at a point where a pedestrian tunnel or overhead pedestrian crossing has been provided shall yield the right of way to all vehicles upon the roadway.

"Where traffic-control signals are in operation at any place not an intersection pedestrians shall not cross at any place except in a marked crosswalk."

" 'Crosswalk' means that portion of a roadway ordinarily included within the prolongation or connection of the lateral lines of sidewalks at intersections, or,

"Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface." Code section 321.1(55).

As stated, there was no marked crosswalk on Keo at Eleventh and there were no sidewalks on Eleventh from which an unmarked crosswalk might be established.

III. Defendant assigns as the first error relied on for reversal the overruling of his motion for directed verdict and judgment notwithstanding the verdict. He contends

that as a matter of law plaintiff was negligent by reason of his violation of the municipal ordinances and section 321.328, set out supra, and this negligence was a proximate cause of his injuries.

The contention is plaintiff's negligence was established by the facts (1) the accident occurred in a business district, (2) plaintiff was in the street and (3) not in a crosswalk.

It is undisputed the accident occurred in a business district as defined in section 321.1(57). Plaintiff concedes he was not in a crosswalk as that term is defined by statute and all parties agree plaintiff was in Keosauqua Street at the time of impact.

■ Establishment of these facts constitutes substantial evidence of plaintiff's negligence. However, this does not reach defendant's contention the jury should have been told plaintiff was negligent as a matter of law by reason of his undisputed violation of the ordinance and statute. Plaintiff, on the other hand, contends these facts merely generate a jury issue as to plaintiff's negligence and the question was properly submitted by the court.

So far as we are aware, we have never directly decided whether violation without legal excuse of *an ordinance* adopted pursuant to Code section 321.328 constitutes negligence per se.

■ With the exception of violation of section 321.298 requiring vehicles meeting each other to give half the traveled way by turning to the right, which constitutes merely prima facie negligence, violation without legal excuse of other statutes regulating the law of the road is negligence as a matter of law. Kisling v. Thierman, 214 Iowa 911, 915–916, 243 N.W. 552, 554; Florke v. Peterson, 245 Iowa 1031, 1034, 65 N.W.2d 372, 373; Cunningham v. Court, 248 Iowa 654, 664, 82 N.W.2d 292, 298; Kohler v. Sheffert, 250 Iowa 899, 905, 96 N.W.2d 911, 915; and Kroblin Refrigerated X Press, Inc. v. Ledvina, 256 Iowa 229, 234, 127 N.W.2d 133, 136.

In Stewart v. Hilton, 247 Iowa 988, 993–994, 77 N.W.2d 637, 640, we held a pedestrian's violation of section 321.328 requiring a pedestrian not in a marked crosswalk or unmarked crosswalk at an intersection to yield right-of-way to vehicles is negligence per se.

There is no logical reason why this should not be the rule when a municipal ordinance adopted pursuant to this chapter is violated.

In Kisling v. Thierman, supra, 214 Iowa at 915–916, 243 N.W. at 554, we said "statutes *and ordinances* such as these under discussion are a legislative prescription of a suitable precaution, or a fixing by law of the standard of care which is required under the circumstances, and it must follow that a failure to observe the standard of care thus fixed by law is negligence.

" * * *

" * * * a court is warranted in saying to the jury that if the defendant failed to observe the standard of care thus fixed by statute, he is guilty of negligence, unless he has shown a legal excuse for failure to observe the requirements of the statute *or ordinance,* * * *" (Emphasis supplied).

Jensvold v. Chicago Great Western R. Co., 236 Iowa 708, 712–713, 18 N.W.2d 616, 618, holds violation of a city ordinance as to speed of trains is negligence per se.

In Wilson v. Long, 221 Iowa 668, 671, 266 N.W. 482, 484, we find this:

"We have repeatedly held that a violation of a statute *or ordinance* fixing a standard of care required under certain circumstances constitutes negligence per se unless a legal excuse for failure to observe the requirements of the statute or ordinance is established" (Emphasis supplied.)

As in Kroblin Refrigerated X Press, Inc. v. Ledvina, supra, plaintiff did not before the trial court, nor does he here contend the evidence shows anything making com-

pliance with the statute impossible. He makes no claim of legal excuse.

In Boardman v. Davis, 231 Iowa 1227, 1232, 3 N.W.2d 608, 611, appears this: "It is uniformly held that ordinances have the same force and effect within the corporate limits as do laws passed by the legislature."

■ The prevailing view is that an ordinance of the character referred to here is not to be distinguished from a statute. Simpson v. Glenn, 264 Ala. 519, 88 So.2d 326, 327–328; Greyhound Terminal of Louisville v. Thomas, 307 Ky. 44, 209 S.W. 2d 478, 479; Tralle v. Hartman Furniture & Carpet Co., 116 Neb. 418, 217 N.W. 952, 955; Schell v. DuBois, 94 Ohio St. 93, 113 N.E. 664, 667, L.R.A. 1917A, 710; and McCleod v. Tri-State Milling Co., 71 S.D. 362, 24 N.W.2d 485, 487. See also 38 Am.Jur., Negligence, section 168, page 842; 65 C.J.S. Negligence § 19(3); and Prosser on Torts, Third Ed., section 35, pp. 191–203, for collection of authorities from other jurisdictions.

Defendant cites and relies on Nugent v. Quam, S.D., 152 N.W.2d 371, decided by a divided court, which involved a plaintiff-pedestrian who was struck by a motor vehicle when crossing a street outside the crosswalk in a business district of Mitchell. A municipal ordinance provided "that every pedestrian crossing a roadway at any other point than in a marked crosswalk or an unmarked crosswalk at the end of a block shall yield the right-of-way to vehicles upon the roadway, provided that this provision shall not relieve the driver of any vehicle from the duty to exercise due care for the safety of pedestrians." The majority held plaintiff's violation of this ordinance constituted negligence as a matter of law and of such character as to deprive him of the advantage of the South Dakota comparative negligence statute and to entitle defendant to a directed verdict.

■ We hold violation without legal excuse of section 321.328 or an ordinance of the character here considered, adopted pursuant thereto, is negligence per se.

IV. Whether it appears as a matter of law plaintiff violated § 321.328 or the municipal ordinances pleaded is another question requiring consideration.

Although conceding he was in the street of a business district, not in a crosswalk of any kind at the time of impact, plaintiff contends neither section 321.328 nor the municipal ordinances relied on by defendant have application.

We first consider plaintiff's contention that as he proceeded onto Keo he made certain there was no traffic in the curb lane and traffic in the middle lane had stopped, yielding to him and he thus had a right to be there.

As previously noted, the first paragraph of both sections 30–33 of the municipal ordinance and 321.328 of the state statute requires "every pedestrian crossing a roadway at a point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

Defendant argues it was plaintiff's avowed purpose to remain in the street for the purpose of stopping the movement of northwesterly-bound vehicles on Keo so his employer's trucks might pull out from a private driveway onto this street, not for the purpose of yielding the right-of-way to vehicles upon the roadway.

There is merit in defendant's argument. When plaintiff stepped from in front of the stopped vehicle in the middle lane into the curb lane, flashed his light and waved his arms, he had only one purpose in mind—to stop defendant's vehicle, not yield to it. The establishment of these undisputed facts did not involve the credibility of any witness.

Whether we are to hold plaintiff failed as a matter of law to yield the right-of-way to defendant's vehicle depends of

course upon the applicability of the statute and ordinances.

In further support of his contention that neither the statute nor ordinances apply plaintiff argues it is undisputed that he was not "crossing the roadway", but had proceeded only to the middle lane before taking the step into the curb lane before impact.

The basic question seems to be whether the word "crossing" in the statute and ordinance is to be given its ordinary significance of passing from one side to the other. Webster's New International Dictionary, (Second Ed.); 25 C.J.S. Cross page 15.

In Severson v. Sueppel, 260 Iowa ——, ——, 152 N.W.2d 281, 284, we said:

"In interpreting a statute we look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. [Citations] * * *"

■ Section 321.328 and the Des Moines ordinances adopted pursuant thereto were intended to promote highway safety by establishing a minimal standard of care required of persons on foot crossing a roadway and should be given an interpretation in furtherance of that object. See The "Care" Required of a Jaywalker, 5 Drake L.Rev. 35, 42.

In Sinclair Refining Co. v. Burch, 235 Iowa 594, 596, 16 N.W.2d 359, 361, we find this:

"The primary rule in interpreting a statute is to ascertain and give effect to the intention of the legislature. [Citations] * * *

"It is a familiar rule that the manifest intent of the legislature will prevail over the literal import of the words used; that a thing which is within the intention of the lawmakers is as much within the statute as if were within the letter; and a thing within the letter of the statute is not within the statute unless it is within the intention of the legislature. [Citations] * * *"

■ "The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute." In re Estate of Klug, 251 Iowa 1128, 1133, 104 N.W.2d 600, 603, quoting from 82 C.J.S. Statutes § 321. See also Grant v. Norris, 249 Iowa 236, 245, 85 N.W.2d 261, 266; Selken v. Northland Ins. Co., 249 Iowa 1046, 1053, 90 N.W.2d 29, 33, 388; Spencer Pub. Co. v. City of Spencer, 250 Iowa 47, 51, 92 N.W.2d 633, 635; and State ex rel. Board of Pharmacy Examiners v. McEwen, 250 Iowa 721, 725, 96 N.W.2d 189, 191–192.

In Hocking v. Rehnquist, 100 Ill.App.2d 417, 241 N.E.2d 337, 341, under a similar statute requiring a pedestrian to yield the right-of-way, it was held that the giving of the pedestrian crossing instruction was not justified where it was undisputed the pedestrian had previously completed crossing the roadway before defendant's driver came upon the scene. The court said "in so far as defendants were concerned, plaintiff was simply a man standing either on or at the edge of the main traveled portion of the highway".

In Newton v. Thomas, 137 Cal.App.2d 748, 762, 291 P.2d 503, 511, decedent was standing on the street side two to three feet from his parked car talking to members of his family in the car. Measurements showed the point of impact was 44 inches from the car. The court held whether these measurements proved that decedent had started to cross the street or whether his movement of 8 to 20 inches was due to recoil from fright at hearing the brakes and seeing the car rushing down on him was a matter for the jury.

We thus have the two extremes, in one the injured pedestrian had completed his

crossing and the other involved the possibility of a pedestrian's moving a distance of less than two feet toward the opposite side of the roadway, where courts have refused to say that as a matter of law a pedestrian under the circumstances was crossing a roadway.

But here plaintiff had crossed over half of a 39-foot roadway. It seems to us to be splitting hairs to say that a person is not engaged in crossing a roadway merely because he has not traversed the entire street from curb to curb and that the statute and ordinance do not cover a partial crossing under the circumstances here.

Myhre v. Peterson, 233 Or. 470, 378 P. 2d 1002, 1004, supports our position. In that case defendant motorist argued that a similar statute did not apply as the injured plaintiff was not a "pedestrian crossing the roadway" within its meaning. The facts reveal plaintiff, a railroad employee, was required to leave the depot, walk part way across Front Street in Salem near the railroad track and deliver an order or message to the fireman on the locomotive. After that he was to return to his duties in the depot. Under the evidence in the light most favorable to plaintiff he had traveled six feet from the point where he delivered the order before being struck. The court rejected defendant's contention that the Oregon statute did not cover such partial crossing.

In Janson v. Fulton, Iowa, 162 N.W.2d 438, 442–443, we expressed similar principles to be applied in seeking the legislative intent as expressed in a statute:

"The construction of any statute must be reasonable and must be sensibly and fairly made with a view of carrying out the obvious intention of the legislature enacting it.

"It is a familiar, fundamental rule of statutory construction that, if fairly possible, a construction resulting in unreasonableness as well as absurd consequences will be avoided. [Citations] * * *

"To put the matter differently, a statute should be given a sensible, practical, workable and logical construction. [Citations] * * *

" * * *

"The intent to enact an unworkable statute is not to be imputed to the legislature unless the statutory language expressly requires it. [Citation] * * *

" * * *

"In Kruck v. Needles, supra, 259 Iowa [470] at 475–478, 144 N.W.2d [296] at 300–301, we said avoidance of unreasonable consequences is permissible only where the statute is ambiguous or of doubtful meaning. This merely means that statutory construction is properly invoked when the legislative acts contain such ambiguities or obscurities that reasonable minds may disagree or be uncertain as to their meaning. [Citations] * * *"

■ Code section 4.2 requiring a liberal construction in order to give effect to the purposes and objects statutes and ordinances seek to promote is further support for interpreting section 321.328 and the municipal ordinances adopted pursuant thereto as applying to crossings of roadways under the circumstances here. The word "crossing" as used therein was not intended to be limited to its ordinary significance.

To hold otherwise would result in "unreasonableness as well as absurd consequences" when the wording of the statute does not require it. A holding that the statute does not apply when a person on foot had only completed a quarter, a third, a half or any amount less than an entire curb-to-curb crossing before being struck would be an impractical construction.

■ We hold the jury should have been told that as a matter of law the evidence showed plaintiff when struck was crossing the roadway in violation of the statute and ordinances and was negligent.

V. Defendant further contends under his first assignment of error "a proximate cause" was established as a matter of law.

In several recent decisions we have repeated the definition of proximate cause from Restatement, Second, Torts, section 431:

"The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." Frederick v. Goff, 251 Iowa 290, 298, 100 N.W.2d 624, 629; Sayre v. Andrews, 259 Iowa 930, 942, 146 N.W.2d 336, 344; Davidson v. Cooney, 259 Iowa 1278, 1283, 147 N.W.2d 819, 823; Van Aernam v. Nielsen, Iowa, 157 N.W. 2d 138, 143; and Naxera v. Wathan, Iowa, 159 N.W.2d 513, 521, and citations in these cases.

■ " * * * [I]n actions brought involving accidents which occurred on or subsequent to July 4, 1965, the defendant, if he relies upon the negligence of plaintiff as a complete defense or bar to plaintiff's recovery, has the burden of pleading and proving negligence of plaintiff was a proximate cause of the injury or damage." Schultz v. Gosselink, 260 Iowa 115, ——, 148 N.W.2d 434, 437–438; Burch v. Witt, 260 Iowa 221, ——, 149 N.W.2d 126, 127; and Harlan v. Passot, 260 Iowa 501, ——, 150 N.W.2d 87, 90. See Code section 619.-17.

■ Generally, questions of proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law. See Rule 344(f), par. 10, R.C.P.

■ In the absence of an admission by the adverse party, it is not often that a party having the burden of proof upon an issue establishes it as a matter of law. Frideres v. Lowden, 235 Iowa 640, 642, 17 N.W.2d 396, 397; Estate of Goeders, 260

Iowa 87, ——, 148 N.W.2d 438, 442; Clubb v. Osborn, Iowa, 149 N.W.2d 318, 322.

Defendant concedes these rules but maintains this is one of those exceptional cases where his burden of proving plaintiff's negligence was a proximate cause has been carried as a matter of law and the issue should not have been submitted as one of fact.

He argues plaintiff cannot escape the fact he voluntarily entered this heavy stream of traffic, crossed to the second lane at a moment when the curb lane was empty, stopped the lead car in the second lane, then re-entered the curb lane without pausing to make sure it was clear when he must have known another vehicle might be approaching in the curb lane; even after discovering defendant's vehicle in the curb lane, with an opportunity to remove himself from danger by merely taking a step backward, he did not do so; instead plaintiff waved his arms in an unlawful attempt to make defendant yield the right-of-way; his presence at the place he was hit and his actions at the time were a proximate cause of his being hit.

■ We do not agree. Insofar as the issue of proximate cause is concerned, it was a question of fact to be decided by the jury. As to this issue, this is not the exceptional case where the facts are so clear and undisputed, and the relation of cause and effect are so apparent to every candid mind, that but one conclusion may be fairly drawn therefrom. Lawson v. Fordyce, 234 Iowa 632, 641, 12 N.W.2d 301, 306; Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 362, 30 N.W.2d 120, 123; Dunham v. Des Moines Ry. Co., 240 Iowa 421, 427, 35 N.W.2d 578, 582, and citations in these opinions.

VI. Under the second assigned error, overruling his alternative motion for new trial, defendant repeats the argument urged under his first assignment, plaintiff was negligent as a matter of law by reason of his violation of the municipal ordinance and section 321.328, both set out supra.

He contends the jury should have been told plaintiff was negligent as a matter of law and if they found such negligence was a proximate cause of his injury, their verdict should be for defendant.

In view of our holding in Division IV, supra, there is merit in defendant's contention under this assignment. The trial court erred in failing to grant defendant's alternative motion for new trial.

VII. Under his second assignment relied on defendant also asserts error in admitting the opinion testimony of George W. Brown as to speed based on skid marks.

He does not assert that a properly qualified expert witness may not in any case express an opinion as to speed of an unobserved vehicle based on skid marks but argues the foundation for Brown's testimony was insufficient, both as to qualifications to speed as an expert in this field and as to facts upon which his opinion was based; that the court and jury were left in the dark whether Brown actually possessed the knowledge upon which the opinion testimony could properly be based.

Mr. Brown had a Bachelor's Degree in general science and post graduate degrees in metallurgy (study of structure of metals) and physiology (study of the human body). He has taught in these fields. He was employed part time at the Department of Civil Engineering in the University of Iowa as an assistant professor and privately as a traffic safety consultant to Iowa City for over nine months before trial.

When asked if he had any past experience regarding motor vehicles and their actions on various types of surfaces he answered:

"I have conducted research into the causes and effects of motor vehicle accidents, and when you conduct a research program that considers the basic event in the accident history, that is, the individual accident, you must take into account the behavior of the vehicle in its operational characteristics which is done in research accidents, that is, the mode of braking, the acceleration, deceleration, method of control, steering, shifting, weight distribution of vehicles, the strength of materials and the forces necessary to cause certain types of deformation and so on." Brown had testified about five times as a safety consultant or traffic analyst.

This was followed by a hypothetical question ending with, "Based upon these facts and these facts alone, do you have an opinion as to the speed of the automobile, and answer that yes or no." After answering he had such opinion, Brown was asked to state it, at which point defendant objected "for the reason that it calls for an opinion and conclusion of the witness on a matter which is not the proper subject of expert testimony, and further because no proper foundation has been laid in this record for the expression of an opinion by this witness on this subject matter, he not having shown himself competent to express this opinion or to base any such opinion on any reasonable scientific basis." The objection was overruled.

After Brown had been asked and answered one or two additional questions defendant added "[T]he answer of the witness thus far demonstrates that his opinion is based in part upon a hearsay document of some association that is not in evidence and as to which the defendant has had no opportunity for cross-examination as to its validity."

This objection was sustained and after the court asked, "From your experience that you have testified to you can give an opinion as to the speed of this vehicle at the time it started to lay down skid marks which you have said you can do", the witness answered yes. He was then cautioned by the court, "You may give such an opinion. You may not give what somebody has written as the coefficient of friction or something else, because this is something counsel does not have a chance to cross-examine. They do have a chance to cross-examine you, so if you want to state your

opinion as an expert you may do so at this time."

Brown was then permitted to estimate defendant's speed at 31 and 38 miles per hour as previously noted.

Defendant concedes there is evidence from plaintiff, his eyewitness and himself which would justify a jury in finding him negligent by reason of his violation of the 25 mile an hour speed ordinance, but argues admission of Brown's opinion as to speed of 38 miles per hour was particularly prejudicial because of its bearing on the vital issue of proximate cause. He contends that if the jury believed defendant was traveling 25 to 30 miles per hour, plaintiff's presence at the point he was struck and his conduct would clearly be a proximate cause of his injuries since he had ample time to move; whereas, if they were to believe defendant was traveling at the greater speeds estimated by Brown, plaintiff's failure to move might not have been a proximate cause because of lack of time.

■ The argument is not persuasive. At 30 miles per hour defendant would be traveling approximately 44 feet per second. At 38, approximately 59 feet, a difference of less than the average car length. In the first instance plaintiff would have had approximately one second to react, in the other approximately .75 of a second.

On appeal defendant calls attention to many facts omitted from the hypothetical which he maintains were essential for a sufficient foundation, such as condition of the asphalt surface of Keo—wet, dry or icy, the amount of wear on its surface, its composition—rough or smooth, the tire condition of defendant's vehicle and its weight. However, in the objection urged at trial defendant did not point out these factual omissions to the court or opposing counsel.

■ We have said reversible error cannot be predicated upon the general objection that no proper foundation has been laid for admission of the opinion. "A par-ty objecting to the offer of evidence for this reason must point out in what particular or particulars the foundation is deficient so the adversary may have an opportunity to remedy the alleged defect, if possible. [Citations] * * *." State v. Entsminger, Iowa, 160 N.W.2d 480, 482–483.

■ "The objection to the question 'as calling for an opinion and conclusion of the witness' is essentially worthless standing alone as it fails to call the attention of the trial court to any specific ground for objection. Opinion and conclusion evidence is not inadmissible solely on that ground. Some specific reason for its exclusion must be stated. It is the duty of counsel to point out the particular defect or defects." Bengford v. Carlem Corporation, Iowa, 156 N.W.2d 855, 865.

■ We agree fundamental facts should not be permitted to rest on opinions, conclusions and hearsay evidence. Brooks v. Gilbert, 250 Iowa 1164, 1169, 98 N.W.2d 309, 312.

In view of the necessity of a new trial we therefore consider defendant's objection only as directed to the witness' lack of qualification to express an opinion on the matter of speed inferred from skid marks.

In Dougherty v. Boyken, Iowa, 155 N.W. 2d 488, 490, we defined an expert "as one who is qualified by study, training, or experience in a particular subject or field of endeavor which gives him special knowledge and permits him to form a definite opinion of his own on matters persons lacking such knowledge or training cannot correctly decide. 31 Am.Jur.2d, Expert and Opinion Evidence, section 26, page 523; 32 C.J.S. Evidence, § 457, page 98."

■ If an expert witness has firsthand knowledge of material facts, as when a physician has examined an injured plaintiff, he may describe what he has seen and give his expert inferences therefrom, such as the cause or probable duration of the condition.

When the expert has no firsthand knowledge of the situation at issue, and has made no investigation of the facts, then the most convenient way of securing the benefit of his scientific skill is to ask him to assume certain facts and give his opinion or inferences in view of such assumptions. McCormick on Evidence, section 14.

Expert testimony is not admissible unless the witness is shown to be qualified and the facts upon which he bases his opinion are sufficient to enable a witness so qualified to express an opinion which is more than a mere conjecture. Hardwick v. Bublitz, 254 Iowa 1253, 1259, 119 N.W.2d 886, 889.

"To warrant the use of expert testimony, * * * two elements are required. First, the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth. The knowledge may in some fields be derived from reading alone, in some from practice alone, or as is more commonly the case, from both." McCormick on Evidence, supra, section 13. See also Morgan, Basic Problems of Evidence (1962), page 223.

In Hardwick v. Bublitz, supra, 254 Iowa at 1257–1258, 119 N.W.2d at 888–889, we quoted with apparent approval from "Judge and Prosecutor in Traffic Court", published by The American Bar Association and The Traffic Institute, Northwestern University, Professor James Stannard Baker, Director of Research:

"The calculation of speeds from skidmarks is done by a formula when the distance of the slide and the drag factor of the pavement have been determined. This formula is:

" 'Speed equals 5.5 times the square root of the product of distance times drag factor.' "

In Lacy, Automobile Accident Cases, Scientific Reconstruction, pages 578–579, we find:

" * * * In addition to measuring the visible skidmarks, in order to estimate speed the investigator must know:

"(1) the coefficient of friction (drag factor) between the tires and the road surface;

"(2) the percent grade of the road if the surface is inclined; and

"(3) variables such as extreme changes in temperature, excessive vehicle weight, foreign substances on the road surface, and weather conditions."

At page 581 the author sets out the basic formula.

There is no showing Brown knew the data necessary to determine the minimum original speed of a vehicle that came to stop by skidding, whether he knew the formula used in computing speed or the variables involved in this calculation. Perhaps Brown knew these factors, if so, it doesn't appear from the record before us.

"Before it can evaluate an expert's opinion, the jury must know what it is founded on." Dougherty v. Boyken, supra, Iowa, 155 N.W.2d at 495; Poweshiek County Nat. Bank v. Nationwide Mut. Ins. Co., Iowa, 156 N.W.2d 671, 676.

An expert in expressing his opinion should recite any facts considered in arriving at his opinion that were not set out in the hypothetical. This eliminates the danger that the expert will consider hearsay in arriving at his conclusions. In support see Dougherty v. Boyken and Poweshiek County Nat. Bank v. Nationwide Mut. Ins. Co., both supra.

The admission or exclusion of expert opinion testimony rests largely in

the judgment of the trial court. This discretion ceases where the record shows as a matter of law the witness is not qualified or the facts upon which the opinion is based are insufficient. Hardwick v. Bublitz and Dougherty v. Boyken, both supra.

■ We hold the foundation as to Brown's qualifications to determine speed of an unobserved motor vehicle was insufficient under this record and the admission of his opinion was an abuse of discretion. Perhaps on a retrial evidence of this witness' qualifications may be sufficiently developed to make his opinion admissible.

The case is

Reversed and remanded for new trial.

All Justices concur except MOORE, LARSON and BECKER, JJ., who dissent.

MOORE, Justice (dissenting).

I respectfully dissent.

I. The majority adopts defendant's contention that under the provisions of Code section 321.328 and section 30–33.01 of the Des Moines Municipal Code a person in the street not in a crosswalk in a business district is negligent as a matter of law and the jury should be so instructed. I disagree with such a holding under the facts here.

I agree that violation of a law of the road, including valid city ordinances, without legal excuse, is negligence per se with the one exception, not applicable here, as established by our oft-cited case of Kisling v. Thierman, 214 Iowa 911, 915, 916, 243 N.W. 552, 554.

Section 30–33.1 provides: "No pedestrian shall *cross a roadway* other than in a crosswalk in any business district." (Emphasis added).

Code section 321.328 provides: *"Crossing* at other than crosswalk. Every pedestrian *crossing a roadway* at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to

all vehicles upon the roadway except that cities and towns may restrict *such a crossing* by ordinance." (Emphasis added).

These provisions are clearly limited to prohibiting jaywalking. They certainly do not prohibit a person stepping into the street to enter on the driver's side of a parked car, alighting from a bus and walking to the curb at a place other than a crosswalk, standing or walking in or along the edge of a roadway or perhaps standing near a disabled vehicle. Other statutes and ordinances may prohibit such walking or standing but we are here considering only the duty prescribed under the provisions of Code section 321.328 and ordinance 30–33.01.

Defendant alleged and had the burden of proving plaintiff was violating these provisions. The evidence is undisputed plaintiff was not crossing a roadway. He was in the roadway for the limiting purpose of assisting a fellow employee in backing a truck into the east lane of Keo and avoiding an accident. He neither intended nor attempted to "cross a roadway". He was not in the process of jaywalking.

I do not strongly disagree with the cases cited by the majority. They are factually distinguishable. In Stewart v. Hilton, 247 Iowa 988, 77 N.W.2d 637, plaintiff was admittedly walking wih her sister across a street in Toledo.

In Nugent v. Quam, S.D., 152 N.W.2d 371, plaintiff, an elderly man, had left a supermarket carrying groceries and was almost across the street when struck by defendant's vehicle. Plaintiff admitted he was crossing the street.

In Newton v. Thomas, 137 Cal.App.2d 748, 291 P.2d 503, there was a conflict of evidence as to whether plaintiff's decedent had left the parked car near which he was standing in the street and started walking across the street to a cafe where he intended to go. The court held the question of whether he was crossing the street when struck by defendant's vehicle was for the

jury. The court refused to hold plaintiff's decedent was negligent as a matter of law under an ordinance similar to 30–33.1. At page 511, 291 P.2d, the court states: "We cannot say, as defendants ask us to do, that as a matter of law the evidence shows decedent when hit was in the act of crossing the street. A mere intention to cross is not a crossing. See Kuist v. Curran, 116 Cal.App.2d 404, 409, 253 P.2d 681. Nor can it be said that a person standing in the street is crossing it. See Dennis v. Gonzales, 91 Cal.App.2d 203, 206, 205 P.2d 55."

In Hocking v. Rehnquist, 100 Ill.App.2d 417, 241 N.E.2d 337, plaintiff was standing on the roadway beside his wife's car which was parked on the highway's shoulder when he was struck by defendant's truck. The court held there was no evidence tending to show plaintiff was crossing the road and the lower court erred in giving defendant's requested instruction to the effect a pedestrian not crossing in a marked or unmarked crosswalk must yield to approaching vehicle. The Illinois court did not hold plaintiff in standing in the roadway was negligent as a matter of law. Its holding was that the statute was not applicable under the facts shown. As pointed out by the majority opinion, the court said: "In so far as defendants were concerned, plaintiff was simply a man standing either on or at the edge of the main travelled portion of the highway."

In Myhre v. Peterson, 233 Or. 470, 378 P.2d 1002, plaintiff, a railroad employee, had walked across Front Street in Salem and delivered a message to a fireman on a locomotive and was returning to the curb when struck by defendant's car. The railroad ran down Front Street. Plaintiff had crossed the street as far as possible with the train present and contended he was returning within the crosswalk of the intersecting street. The court held plaintiff was entitled to have the issue of his right of way submitted to the jury. The court observed "the legislature, which presumably knows that trains do run on streets of our cities, did not choose to make an exception in that regard, the court cannot do so." In other words the court held the area between the curb and railroad was a roadway within the statute. We have no such unusual facts or such a presumption in the case at bar.

The two California cases cited in the quote from Newton v. Thomas, supra, hold contrary to the majority opinion here. In Kuist v. Curran, supra, 116 Cal.App.2d 404, 253 P.2d 681, the court held a newspaper vendor standing in the middle of a six-lane highway was not in the process of crossing the street and it was error to instruct the vendor had a duty to yield the right of way to defendant's automobile.

The record here discloses without any dispute plaintiff had no intention to cross the roadway. In submitting the question of plaintiff's negligence for violation of Code section 321.328 and ordinance 30–33.1 the court gave defendant more than he was entitled to. Under the facts that issue should not have been submitted to the jury but as to defendant it was without prejudice.

II. Several witnesses estimated defendant's speed in excess of the 25-mile per hour limit. Defendant admitted he was going 25 or more. Some witnesses estimated defendant's speed as high as 35. The skid marks of defendant's vehicle were at least 46 feet long.

I agree the foundation laid for the opinion testimony of Doctor Brown should have been more complete. His testimony, however, was cumulative and the receipt thereof, in my opinion, is not so prejudicial as to require a reversal.

A perfect trial is not possible. Defendant had a fair trial.

I would affirm.

LARSON and BECKER, JJ., join in this dissent.